.HENRY V. FREEMAN *vs.* THE SELECTMEN AND TOWN CLERK OF NEW HAVEN.

The constitution of the state (Art. 6, sec. 5,) gives to the selectmen and town clerk of each town the power to decide on the qualifications of persons applying to be admitted as electors, and the superior court has no power by writ of mandamus to control their action.

APPLICATION to the superior court in New Haven county for a mandamus against the selectmen and town clerk of the town of New Haven, to compel them to admit the petitioner to the privileges of an elector. The petition was as follows:

To the superior court now in session &c. The application of Henry V. Freeman, of said town of New Haven, respectfully showeth:—That he is a *white* male citizen of the United States, born within the jurisdiction thereof, in the state of New Jersey, where his father was then a citizen of the United States there resident; that he, your applicant, has resided and had his home within this state and within said town of New Haven, continuously, since the thirtieth day of Septem-

ber, A. D., 1865, being for the term of more than one year before the action of the town clerk and board of selectmen hereinafter stated and complained of, and before he offered himself to be admitted to the privileges of an elector in said town, as hereinafter mentioned ; that he sustains and ever has sustained a good moral character ; that he is of the age of twenty-three years and upwards ; and that he is able, and was, at the time last above referred to, able, to read any article of the constitution and any section of the statutes of this state.

That on the thirteenth day of March, 1867, the town clerk and board of selectmen were convened by adjournment in said town of New Haven, for the purpose of deciding upon all applications to be admitted to the privileges of an elector of said town, and that he then presented himself before them, thus convened, and applied for admission to the privileges of an elector of said town, and stated to them his qualifications therefor, as above set forth, and gave the customary and proper evidence thereof.

That said board of selectmen and the town clerk, thus convened, then and there refused to admit your applicant to the privileges of an elector as aforesaid, on the sole ground that he was led to come to New Haven by the facilities here afforded for acquiring a liberal education, and that, since taking up his residence in said town, he has been continuously occupied in acquiring a liberal education, and as a student of the arts and sciences, under the instruction of certain citizens of said town ; and that the moderator of said body, composed of said board of selectmen and town clerk, then and there declared publicly that they rejected said application of your petitioner solely on said ground.

And your applicant further avers that he is in all respects qualified according to law, and was, at the time of said rejection, to be admitted to the privileges of an elector of said town, and that he was then and there, and still is, both so qualified and ready and desirous to take the oath by law prescribed to be taken upon his admission by an elector ; and that said town clerk and board of selectmen were satisfied

that he possessed all such qualifications at said time, excepting that they then declared themselves not satisfied that he had acquired a legal residence in said state and town, by reason of the grounds last above described in the preceding paragraph hereof, although they were satisfied that he had statedly lodged in said town ever since the thirtieth day of September, 1865, and that he had no wife or child resident in any other place.

And your applicant respectfully shows to this court that said town clerk and board of selectmen, in so rejecting his said application, did not proceed and act in the manner prescribed by law, but on the contrary acted illegally, on the assumption and pretense of an erroneous principle of exclusion not warranted by law, and that they, or the majority of them voting for said rejection, as your applicant believes and therefore avers, acted in said behalf wrongfully, unfaithfully, and with a wrongful and fraudulent intent and design to reject and exclude your applicant, because he was of political sentiments and convictions antagonistic to those of the said majority, and, if admitted to be an elector, would probably vote at the impending state election for candidates for office of political sentiments similar to his own.

And your applicant, humbly representing that he deems the right to cast his vote at this time and at the coming election, when great questions and material interests are under review in this commonwealth, to be of inestimable value, and that he has no other remedy than can be furnished by the interposition of this court to vindicate and secure to himself this right, prays this court to issue a writ of mandamus, enjoining the said board of selectmen and the town clerk, at their next regular meeting to be held after the issue of said writ, for the purpose of deciding upon applications to be admitted to the privileges of an elector, to admit your applicant to said privileges upon his taking the oath prescribed by law, or to signify cause to the contrary thereof to this court, at some early day fixed by this court therefor, previous to the third Thursday of March during this present term. And your petitioner will ever pray, &c.

The statements of the petition were sworn to, and a rule was obtained requiring the selectmen and town clerk to show cause why a writ of mandamus should not be issued against them. The selectmen appeared, and demurred to the petition, on the ground that the court had no jurisdiction over the subject matter, and the court, (*Loomis, J.,*) dismissed the petition on that ground. The petitioner thereupon brought the record before this court by motion in error.

*Baldwin* and *J. T. Platt*, for the plaintiff in error.

1. The fact of the petitioner's coming to New Haven as a student is of no importance, except as affording one ground of inference as to a change of domicil, and raised no legal presumption. *Putnam* v. *Johnson*, 10 Mass., 488 ; *Opinion of the Justices*, 5 Met., 587. And as the demurrer admits that his domicil was, in fact, in New Haven, and that the only ground for excluding him was a mere pretense, wrongfully, unfaithfully, and fraudulently put forward, he has a *right* to be admitted an elector.

2. To this right is attached a *remedy*, unless the constitution denies it. *Ashby* v. *White*, 2 Ld. Raym., 938 ; *Marbury* v. *Madison*, 1 Cranch, 137. But our constitution, in the preamble, in sec. 12 of the declaration of rights, in Art. 4, sec. 6, and Art. 10, sec. 1, and in Art. 8 of the amendments, evinces a just solicitude to support the privilege of free suffrage, the right to vote, and a constant care that this right shall be enjoyed according to law, and, if infringed upon, vindicated by the power of the law. Is it probable that the framers of such an instrument would leave the final decision upon the right of suffrage in every case to the vote of the majority of a local board, exercising a brief and in other respects a petty authority, and representing only the majority of the voters of a township ? In the tyranny of majorities, as they well knew, lies the great danger of republican institutions. See 1 DeToqueville on Democracy in America, 281, 2, 3, 293. Uniformity too, the soul of justice, would be necessarily wanting to such decisions, by which the same class of citizens might be allowed to vote in Middletown

or Hartford, and not in New Haven. If then we found an authority unlimited in terms given to these local boards, such a construction should be given to it, if possible, as to make it harmonize with the general spirit and object of the constitution, and still secure the right of suffrage to all entitled to exercise it. But the authority, on which alone the respondents base their defense, is not thus unlimited. They are to discharge their duties " faithfully," and " according to law," and in particular to " decide on the qualifications of electors, at such times and *in such manner as may be prescribed by law.*" Const., Art. 6, sec. 5. We have here a limitation bound up with the power—a condition of the grant. Our constitution is simply a limitation of the law and the law-making power. *Starr* v. *Pease*, 8 Conn., 541. It has limited the right of decision, in cases like the present, to the votes of boards like the respondents, if so be that they decide according to law, and in the manner prescribed by law. If they do not so decide, the law enters for condition broken, and the constitution sedulously confirms to the injured party his remedy before the courts of law. Const., Art. 1, sec. 12. And in all these cases the right of the citizen wrongfully denied his vote is doubly protected by this section. He has suffered an injury to his person, for it is not the person of a freeman; and to his property, for he is debarred from holding public office and receiving its emoluments.

3. The law, referred to in this clause of limitation, is, of course, common law, as modified by the constitution and statutes of this state. But our constitution prescribes that a citizen possessing the qualifications conceded to belong to the petitioner, shall be an elector, and the common law declares that, where one entitled to admission to the enjoyment of a franchise is rejected by the admitting power, the courts of justice shall prescribe to that power the rule of decision, and compel, by writ of mandamus, obedience to their prescription. Ang. & Ames on Corp., § 702; 1 Swift Dig., 563; 3 Steph. N. P., 2292; Willcock on Munic. Corp., 368; *Rex* v. *Midhurst*, 1 Wils., 283; *Rex* v. *Morris*, 1 Ld. Raym., 337; *Green* v. *Mayor of Durham*, 1 Burr., 127, 131; *Rex* v. *Tur-*

*key Company,* 2 id., 999 ; *King* v. *Lord Montacute,* 1 W.
Bla., 60 ; *Ex parte Gebhard,* 1 Johns. Cas., 134 ; *People* v·
*Superior Court,* 5 Wend., 114, 125.    *People* v. *Superior
Court,* 10 id., 284 ; *People ex rel. Bartlett* v. *Medical Society,*
32 N. York, 187 ; Remarks of Hinman, J., in *Burr* v. *Nor-
ton,* 25 Conn., 110.    And it is to be remarked that in these
English cases, the original right of admission and decision
was as firmly vested in the defendant cities and corporations,
as in the case of the respondents here.    In the one case, the
right flowed from royal charter, or act of parliament; in the
other, from the fundamental constitution ; in both, from the
supreme law of the land.    The courts control not the power,
but its abuse,—not the exercise of a right, but the denial of a
right.

4. The remedy by mandamus, then, exists in cases similar
to this, by the common law.    Is less than English justice
given by Connecticut law ?    Has our constitution imposed
upon the power of the respondents this limitation, which they
admit that they have transgressed, and left no mode of en-
forcing its observance ?    *The judicial power of the state* com-
prehends the power of recognizing, adopting and enforcing
every rule, principle and form of remedy of the common law.
This great power our constitution conferred upon our courts
of justice, subject to apportionment and regulation by statute
law.    Art. 2 ; Art. 5, sec. 1.    The statute law has made the
superior court a court of general jurisdiction, and particu-
larly authorized it to issue and proceed with writs of manda-
mus according to the course of the common law.    Gen. Stat.
pp. 219, 220, secs. 16, 18 ; p. 86, sec. 372.    It is the course
of the common law, as we have endeavored to show, to give
a remedy by mandamus in cases analogous to the present,
and as nearly identical with it as is possible under the differ-
ence in different forms of government.    The same remedy,
then, is within the jurisdiction of the superior court, and that
it should be is fully in accordance with the general spirit of
the legislation of our state.    Our earliest and our latest laws
show that our people entertain no jealousy of the influence of
the courts upon our elections or the rights and claims of

electors.   See Statutes, ed. of 1808, pp. 357, 358, and note 3 ; Public Acts of 1867, pp. 159, 162.

5. It may be true that a mandamus has never before been granted, or indeed applied for, in a case like this.   But the first half century has not yet passed since the adoption of our constitution, and it is not strange that all its grants of power should not yet have received a judicial construction.   With the growth of a state, the growth of corruption in local office keeps pace, and the denser the population the more necessary is the frequent interposition of the judicial power to preserve private rights and public honor.   ·

6. The constitution does not regard the respondents as judicial officers.   Art. 2 ; Art. 5, § 1, 3.   Nor are they vested, *pro hac vice*, with such a judicial or quasi-judicial discretion, as to be beyond the reach of a mandamus.   Their power in the premises is no greater than that of the defendant corporations in the English cases above cited, against whom mandamus lay.   Their decisions are not entitled to the respect or immunities of judicial decisions, when brought before the courts in other modes.   The members of similar bodies have repeatedly been held liable to an elector wrongfully excluded, in an action on the case, at common law, and in many instances even when no malice was alleged.   *Kilham* v. *Ward*, 2 Mass., 236 ; *Lincoln* v. *Hapgood*, 11 id., 350 ; *Blanchard* v. *Stearns*, 5 Met., 298, 300 ; Remarks of Hosmer, C. J., in *Swift* v. *Chamberlain*, 3 Conn., 543 ; *Hyde* v. *Brush*, Superior Court, Fairfield Co., Aug. Term, 1867.   But were they to be considered as acting judicially, and privileged as judicial officers, their decisions could not be reviewed in an action on the case, although malice were proved.   *Pratt* v. *Gardner*, 2 Cush., 63.   Their office is to find facts, not to determine law.   The facts, in this case, have been found ; they are spread upon the record ; and it only remains for them to pronounce the judgment of the law.   Were they judicial officers even, and in a similar situation, with the facts found and judgment only suspended, they could be compelled by mandamus to render that judgment, and render it correctly.   *Gordon* v. *Longest*, 16 Pet., 97, 104 ; *Commonwealth*

v. *Justices*, 5 Mass., 435 ; *Case of Morse, Petitioner*, 18 Pick., 443, 446 ; *Kimball* v. *Morris, Judge*, 2 Met., 573. Their case is not like that of assessors of taxes, who can have no rule but their own opinion, and whose *ipse dixit* is final when honestly pronounced ; for the law gives a rule to the respondents. And it is submitted that, if an excessive assessment were *fraudulently* made, particularly in a case in which any principle of law were involved, the law would give relief. Can the respondents' decision be final, when grounded simply on their fraudulent assumption, as a principle of law, that no " student " can " reside " in this state, although he has statedly lodged and had his home within it for more than a year ?

7. The action of these local boards can rarely be presented before the courts in such a shape as to be fairly open to revision. The respondents might have assigned no cause for their action and admitted none, but they have declared and spread out on the record their reasons,—first, a false principle of law ; second, partizan corruption,—and admitted that they had no other ground for excluding him, but were satisfied that he possessed all the requisite qualifications. They have found the facts ; we ask that they may apply the law.

8. No damages against the respondents individually can compensate the petitioner for a deprivation of the right to vote. The remedies by case and mandamus are concurrent, each operating in a distinct sphere. We wish a specific thing to be done, as the law commands. *Treat* v. *Middletown*, 8 Conn., 246, 7 ; 1 Swift Dig., 564 ; *Rex* v. *Blooer*, 2 Burr., 1045.

9. If the petitioner was entitled to a mandamus when applied for, he is entitled to a reversal of the judgment refusing it,—although on remanding the cause to the court below it should appear that the specific relief that he has asked, or might, by an amendment of his petition, ask, (Willcock on Munic. Corp. 222,) has been precluded by the law's delay.

*C. R. Ingersoll* and *Doolittle,* contra.

CARPENTER, J.　We have no occasion to consider the question whether the respondents decided correctly upon the facts stated in the petition.　The record presents this simple question : is it competent for the superior court by writ of mandamus to control the action of the board of registration in the matter of admitting electors ?

The constitution, Art. 6th, sec. 5, provides that " the selectmen, and town clerk, of the several towns, shall decide on the qualifications of electors, at such times and in such manner as may be prescribed by law."

The duties thus imposed upon these officers have been discharged by them, without any interference by the courts, for nearly half a century.　The fact that a claim of this kind has never been made before, is a strong argument against the validity of the claim.　The argument is materially strengthened by the entire absence of any provision, either in the constitution or laws, conferring power upon the courts, in any form of proceeding, to review the action of these boards. There is force also in the consideration that the legislature, by the laws enacted to carry into effect this provision of the constitution, has virtually put a construction upon it adverse to the claim of the petitioner.　The time within which these duties are to be performed is limited, and necessarily so, to a few days.　In most of the counties in the state no courts are then in session ; and if in session, the ordinary course of proceeding would hardly admit of a trial in season to be of any service to the party concerned.　The members of the board would be liable to be called from their legitimate official duties and compelled to attend court, it might be at a long distance from home, at the suit of every one who should be refused the privilege of voting.　Litigation would be largely increased ; and there would be added to the excitement which sometimes attends our political campaigns the bitterness of feeling which always accompanies, to a greater or less extent, litigation in the courts.　It cannot be that the framers of the constitution intended that it should be so construed as to lead to such results.

But let us examine more carefully the nature of these

duties.   The qualifications of electors are prescribed in the eighth and eleventh articles of the amendments to the constitution.   Before an applicant can be admitted to the privileges of an elector, the board must find that he is a white male citizen of the United States ; that he has attained the age of twenty one years ; that he has resided in the state for a term of one year next preceding, and in the town in which he offers himself at least six months; that he sustains a good moral character, and is able to read any article of the constitution or any section of the statutes of this state.   Most of these questions, in a majority of cases, must be determined upon testimony, and that testimony, when required, must be given under the sanction of an oath.   When it is all before the board it should be weighed and each question determined according to the weight of testimony.   Other questions will also arise.   It is sometimes difficult to determine whether a man is a white man within the meaning of the constitution. What shall constitute residence, and what shall be the standard of good character ?   These and like questions must be passed upon by the selectmen and town clerk.   The constitution has made them the sole judges of their qualifications.

Thus it will be seen that these duties are not merely ministerial ; and if they are not judicial, in the strict sense of the word, they certainly require the exercise of judgment and discretion ; and it is inconsistent with the spirit of our free institutions that the exercise of such judgment and discretion should be controlled by any other persons.   These officers are responsible to the people for their action, and, so long as they act fairly, they are, and ought to be, independent of all other control.   If they act wantonly or maliciously, they may be liable to the party injured, but not in this form of proceeding.   Should a case arise in which we are called upon to decide any or all of these questions, we should not hesitate, if necessary, to differ from the opinion of the board of registration ; but we cannot, in this form of action, review their proceedings, or direct them how to decide in any given case.

These views are believed to be in harmony with reported cases   In *Goddard* v. *Seymour*, 30 Conn., 399, in speaking

of the duties of assessors and boards of relief, the court say: "The law imposes upon these officers duties which they cannot possibly discharge to the satisfaction of all. Unfortunately the class of men who will if possible, by any means right or wrong, exempt their property from just taxation, is large. But it is enough for the present purpose to say, that the law has constituted these officers, and not judges of the superior court, the tribunal to determine the valuation of taxable property."

In *Kendall* v. *The United States*, 12 Peters, 524, it was decided that the Circuit Court of the district of Columbia has jurisdiction to issue a writ of mandamus to the Postmaster-General, to compel him to do a *merely ministerial act*, which the relator has a complete right, under an act of Congress, to have done by him and as to which *he has no discretion*.

In *Decatur* v. *Paulding*, 14 Peters, 497, the Supreme Court of the United States decided that a writ of mandamus cannot be issued by the Circuit Court of the district of Columbia, to compel the Secretary of the Navy to perform an executive act, not merely ministerial, but involving the exercise of judgment. In that case the court say: "If a suit should come before this court, which involved the construction of any of these laws, the court certainly would not be bound to adopt the construction given by the head of a department. And if they supposed his decision to be wrong, they would, of course, so pronounce their judgment. But their judgment upon the construction of a law must be given in a case in which they have jurisdiction, and in which it is their duty to interpret the act of Congress, in order to ascertain the rights of the parties in the cause before them. The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it by mandamus act directly upon the officer, and guide and control his judgment or discretion in the matters committed to his care, in the ordinary discharge of his official duties."

In *The United States* v. *Guthrie*, 17 Howard, 304, the court say, "that the only acts to which the power of the courts by

mandamus extends, are such as are purely ministerial, and with regard to which nothing like judgment or discretion, in the performance of his duties, is left to the officer; but that, wherever the right of judgment or decision exists in him, it is he, and not the courts, who can regulate its exercise."

There is no error in the judgment complained of.

In this opinion the other judges concurred.