## THE STATE v. WOOD.*

A writ of error will not lie to review the decision of an inferior court refusing to allow a *certiorari*, such allowance not being a matter of right, but resting in the discretion of the court.

GREEN, C. J. The first ground relied upon for quashing the writ is, that there is no order, judgment, or proceeding ·in the court below from which a writ of error will lie.

The strictness of the ancient common law rule, which restricted writs of error to tribunals proceeding according to the course of the common law, and their operation to *technical judgments*, has been greatly relaxed. Still it is considered. that there is some limit to the right of review, and that a writ of error will not lie to remove every order or judgment of an inferior tribunal. The limit conceded on the part of the plaintiff in error is, that there must be a *final judgment*, or an *award* in the nature of a final judgment. The objection in-

* The decision in this case was made in July term, 1847, and is reported in 1 *Zab.* 682. The opinion of the court, delivered by the Chief Justice, was not delivered to the reporter. It being referred to in the preceding case of *Chapin* v. *Woodruff*, the opinion was handed to the reporter, and is placed next to that case, as its most appropriate position.

sisted on by the defendant in error is, that in the court below there was no judgment, nor award in the nature of a judgment.

A judgment is a definite sentence upon the matter at issue between the parties. In the present case there was no adjudication in the court below upon the rights of the parties. The court took no jurisdiction of the case. They refused to take cognizance of the matter in controversy; they decided not to examine the questions of law arising between the parties; they passed no definite sentence; they settled no right. The matter in controversy cannot be said to be *res adjudicata*. The decision of the court cannot be pleaded, nor relied upon in any way, as a former judgment. The question at issue may be again agitated before the same or a co-ordinate tribunal. The decision of the court below cannot, in any technical or appropriate sense, be denominated *final*.

The term *final*, as applied to a judgment or judicial award, has a technical, fixed, and appropriate meaning. It denotes the *essential character*, not the mere consequences, of the order. It is used in contradiction to "*interlocutory.*" It was insisted, upon the argument, that the decision of the court below was in the nature of a *final* judgment, because the party aggrieved was thereby deprived of redress, having no other means of relief. But in this sense many interlocutory orders are final, as an order for bail; fixing the amount of bail; refusing a new trial; refusing to open a judgment obtained by surprise, or to correct an assessment. These and a multitude of orders of a similar character made in the progress of a suit, which are merely interlocutory, and from which it is conceded no writ of error will lie, are final, in the sense used by counsel. They conclude the party. He has no other means of redress. But they are confessedly not *final*, in the technical and appropriate sense of the term.

There is a wide and obvious distinction, which no argument can render more clear, between the refusal to entertain a cause, and the rendering of a final judgment upon the matter at issue. A final judgment can only be rendered in a cause pending; it is one of the steps in the progress of a suit: it cannot exist where there is no cause in court.

If a justice of the peace should refuse, upon request, to issue a summons, which is a writ of right, could it be said that the justice had rendered final judgment, and that his decision might be reviewed by writ of error or upon *certiorari?* And can it with any more propriety be said, that the Supreme Court, in refusing to issue a writ of *certiorari*, have rendered a final judgment, or an award in the nature of a final judgment? If not, then clearly this writ of error cannot be sustained.

But admitting that a cause was actually pending in the court below, assuming that a writ of *certiorari* had been allowed, and that it was subsequently quashed, upon the ground that the writ ought not, in the exercise of a sound discretion, to have been allowed, would the writ of error then lie?

This brings us to the second ground of objection, *viz.* that the allowance or refusal of the writ of *certiorari* was matter of discretion in the court below, upon which error cannot be assigned.

That the allowance of a writ of *certiorari* to a special jurisdiction is a matter resting in sound discretion, was not seriously denied upon the argument. It is a principle, indeed, too long and too firmly established to admit of denial or doubt. The principle has been repeatedly asserted, and the discretion has been more frequently exercised by the Supreme Court of this state than appeared to be supposed by the counsel upon argument.

At February term, 1813, the court refused to allow a *certiorari* to remove the proceedings in a matter of highway. Pennington, J., says, " the allowance of a *certiorari* to a special jurisdiction is in the sound discretion of the court." *Matter of highway, Penn.* 1026. In this case some question was made upon the argument, whether, under the act concerning roads, a *certiorari* would lie. But at the same term as we are informed by a note of the reporter, (*Penn.* 1029) another application for a *certiorari* under the act was considered, and rejected by the whole court on the ground of *inexpediency.*

In *The State* v. *Woodward,* 4 *Halst.* 22, the court quashed a writ of *certiorari* in a matter of highway, upon the ground that it ought not to have been allowed by the court. The al-

lowance of a writ of *certiorari* in cases of this kind (says C. J. Ewing) is in the discretion of the court, who are "*discernere per legem quid sit justum.*" On the return of the writ, if such matters, other than those properly inquirable into by the writ, are shown to the court by a party whose rights or interests are affected, as would, if shown at the moment of application, have induced the court to refuse the allowance, the writ will be quashed. This rule results from the fact, that the allowance is made *ex parte* and without notice. The *certiorari* in this case was quashed because the illegality complained of as a reason for setting aside the road was produced by the act of the prosecutor of the *certiorari:* and the court held that *he* ought not to be allowed to take advantage of it.

In *Haines* v. *Campion*, 3 *Harr.* 49, which was a *certiorari* to bring up the proceedings of two chosen freeholders and two surveyors of the highways, laying out a ditch or drain through the meadows of the plaintiff, under the act of 24th November, 1792, the court, after final argument, in the exercise of its discretion, quashed the writ, because, under the circumstances, it ought not to have been allowed. There was no pretence that the writ was not legally issued ; that it was not the appropriate remedy ; nor was it denied by the court that the proceedings which it was designed to review were not fatally defective. But the court, in the exercise of its discretion, refused to look into the proceedings below. C. J. Hornblower, who delivered the opinion of the court, said, " Had the attention of the court been drawn to this provision of the act, and had it been disclosed to us that the ditch had been laid out and open more than one year, and that the plaintiff had stood by and suffered it to be done without giving the defendant any notice or warning that he intended to draw in question the legality of the proceedings, we would not, in the exercise of a sound discretion, have allowed the writ." And the writ was accordingly quashed.

In *The State* v. *Ten Eyck*, 3 *Harr.* 373, upon a motion to quash a *certiorari* to remove the proceedings in a matter of highway, it appeared that the road was laid out in August, 1840 ; the *certiorari* was applied for and allowed in May

term, 1841. In the mean time the road had been opened by the overseer of the highways, at the expense of the district, nearly or quite its whole length. The court unanimously dismissed the writ, as improvidently issued. The Chief Justice said, if these facts had been disclosed to the court upon the motion for an *allocatur*, the court, in the exercise of a sound discretion, would not have allowed the writ.

I have referred to these cases, not merely as showing the repeated exercises of their discretion in the allowance or quashing of writs of *certiorari* by the Supreme Court, but for the further purpose of illustrating, as I think these cases clearly do, the value and importance of that discretion to the healthful administration of justice.

Assuming, then, that the writ of *certiorari*, in the present instance, is a writ not of right but of *grace;* that it is to be granted not of course, *non ex debito justitiæ,* but in the discretion of the court and upon good cause shown, the question remains, is the order denying the writ the proper subject matter of a writ of error? Now it seems clear in the very nature of the thing, independent of all authority, that in such case a writ of error cannot lie. How is error in law to be assigned upon a matter of discretion? True it is a legal discretion, a discretion regulated by sound principle and just reason—but it is *discretion* still. It rests in the judgment of the court. The moment you bring it to the test of a fixed line, *a law, a rule,* that moment discretion ceases. Law (says Blackstone) is matter of injunction. Its language is, " thou shalt, or shalt not do it." Of its reasonableness or unreasonableness the court is not to judge. It leaves nothing to discretion. A judgment in law is not the judgment of the court, but the sentence of the law pronounced by the court. If the court below were bound to grant the writ of *certiorari* in the present case ; if the law required that it should be done, and there was error in law in not doing it, clearly there was no room for the exercise of discretion. The writ, then, was of *right, not of grace.* Discretion, on the other hand, implies that in the absence of positive law or fixed rule the judge is to decide by his view of expediency or of the demands of equity and justice.

And where a matter rests in the discretion of the court below, by what principle or rule is this court to regulate its judgment, and to affirm or reverse the judgment of the inferior tribunal? There has been no violation of law. The plaintiff has been deprived of no right, for the writ is not of right. An erroneous exercise of discretion is all that is complained of. But how is that error to be ascertained and corrected? There is no rule by which to test it. It can only be done by this court in the exercise of its own discretion. Then it becomes a matter of discretion, not in the Supreme Court, but in this court. The constitution and the laws have vested that discretion in them, not in us; and by what right are we to assume the exercise of a discretion vested not here, but in another tribunal? It would clearly be a violation of law and an unwarranted usurpation of authority, which even a claim to infallibility of judgment in this tribunal could not excuse.

As might be expected upon a principle so clear, there is little conflict of authority. The doctrine, that upon a matter of discretion error will not lie, pervades the books as a settled maxim. It may be regarded as an elementary principle in the administration of justice, that a superior tribunal will never reverse the decision of an inferior common law tribunal for the mere erroneous exercise of judgment upon a matter committed to its discretion. The principle is acknowledged, with some qualification, even in equity, where it is held that the exercise of discretion is not the subject of appeal. *Read* v. *Hodgens*, 2 *Mallory* 381.

In *Rogers* v. *Hosack's Executors*, 18 *Wend.* 329, the Court of Errors of New York held that an appeal would not lie from an order of the chancellor refusing to remove an executor, and to appoint a receiver in his stead. Justice Cowen, in that case, said, " I understand the line of authorities to stand almost without exception, that to warrant a reversal upon appeal from chancery some definite rule of law or equity must appear to have been violated." *Rowley* v. *Van Benthuysen*, 16 *Wend.* 369; *Garr* v. *Hill*, 1 *Halst. Ch. Rep.* 639.

So from a decision of a court of equity allowing or refusing costs, which rest in discretion merely, no appeal lies. By the

English practice, neither an appeal nor a rehearing will be sustained in relation to a question of costs, which rest in discretion merely. But where costs are disposed of as a matter of right, or where they are given or refused contrary to statute or the settled practice of the court, an appeal may be sustained. The same principle is adopted in this country. *Wirdma* v. *Kent*, 1 *Brown's Chan. Cas.* 141, and note; *Winslow* v. *Collins*, 3 *Paige* 89; *Buloid* v. *Miller*, 4 *Paige* 475.

The motion to quash must prevail.

The court unanimously quashed the writ.

CITED in *Woodruff* v. *Chapin*, 3 *Zab..* 555 : *State* v. *French*, 4 *Zab.* 739; *Allen* v. *Tyler*, 3 *Vr.* 501.