GEORGE H. PERRY, JR. vs. JAMES REYNOLDS AND OTHERS.

The selectmen and town clerk are by the constitution of the state (art. 6, sec. 5,) a board of registration in each town to decide on the qualifications and admission of electors in such town. Held that they are *quasi* judicial officers, and exempt from liability for their action so long as they act in good faith and within their jurisdiction.

A man twenty-five years of age, whose parents lived in another state, and

Perry v. Reynolds.

who had left his home with them with no intention of returning and was not aided by them in his support, had resided for more than a year in New Haven as a student in a theological school, a part of the time teaching and preaching there and in the vicinity, and intending to make that the place of his residence until he had completed his studies and obtained employment elsewhere. Held to be domiciled in New Haven and entitled to admission as an elector there.

[Argued December 2d—decided December 29th, 1885.]

ACTION against the defendants as selectmen and town clerk of the town of New Haven, for refusing to admit the plaintiff as an elector; brought to the Court of Common Pleas.

The complaint alleged that, on the 20th day of October, 1884, the plaintiff was a male citizen of the United States, twenty-five years of age; that he had resided in the state of Connecticut for one year, and in the town of New Haven for six months, next preceding that date, and that he had all the qualifications required by the constitution for becoming a voter in the town of New Haven; that on the 16th day of October, 1884, his name was duly registered, under the title "To be made," for the first ward of the town of New Haven, and so remained down to and including the 27th day of said October, and that a duly certified copy of the list was in the possession of the selectmen and town clerk of the town from the 20th to the 27th of said October; that the selectmen and town clerk constituted a board provided by the constitution to decide on the qualifications of persons applying to be admitted as electors; that on the 20th of said October the plaintiff offered himself before the board to be admitted an elector, the defendants then sitting and acting as members of the board for the admission of electors; that the plaintiff was then prepared and ready to prove before the board that he had all the necessary qualifications, and being duly sworn did then make oath to the necessary facts, but that the defendants, after hearing his evidence, decided not to admit him as an elector; and that the defendants by their acts aforesaid had wrongfully and unlawfully deprived him of the enjoyment of his rights as a citizen of the state and of the United States.

A second count set forth more particularly the facts with regard to his residence in New Haven, as follows :—

The plaintiff on the day when he presented himself before the board for the admission of electors in October, 1884, testified that for more than one year prior thereto he had been pursuing theological studies in the divinity school connected with Yale College, and during a portion of that time had been engaged in business, teaching and preaching in New Haven and vicinity; that he had parents residing in the state of Kansas, and that since the month of September, 1883, he had not had any residence or actual home with his parents, and had no intention of treating the residence of his parents as his residence ; and that, during all the time since September, 1883, and down to and including the month of November, 1884, he intended to make the town of New Haven his residence until such a time as he should have completed his studies in said divinity school, and until such time thereafter as he might find it convenient, and until he obtained employment either in or out of said town of New Haven as might seem to him advisable when his studies were completed, and that he did not depend on his parents for support, and was then residing and pursuing his studies in the town of New Haven.

Three of the defendants filed an answer averring that they voted in favor of admitting the plaintiff; the others, five in number, demurred to the complaint, and the case was reserved, on the demurrer, for the advice of this court.

*C. R. Ingersoll* and *W. K. Townsend*, in support of the demurrer.

The act of the defendants which the complaint charges to be wrongful and a legal injury to the plaintiff, was an act done while " the defendants were then sitting and acting as members of the board for the admission of electors." And the act complained of is that " when the plaintiff offered himself to be admitted to the privileges of an elector, the defendants, after hearing the evidence offered by him, decided not to admit him, and refused to permit him

to take the oath prescribed by law in such cases." What the plaintiff testified to on that occasion is of no conse-quence. The defendants acting in their official capacity under the constitution of the state, heard his testimony and all the other evidence offered by the plaintiff, and then, as it was their duty to do, decided the case. They decided against the claim of the plaintiff, and this is his only com-plaint.

The constitution of the state has made the selectmen and town clerk the sole judges of the qualifications of electors, and their duties are of a judicial nature. *Freeman* v. *Select-men of New Haven*, 34 Conn., 415. Such public officers can-not be made responsible in a civil suit, so long as their acts complained of are within the jurisdiction conferred upon them by the law. " I prefer to place the decision upon the broad ground that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges from the highest to the lowest; to jurors and all public offi-cers, whatever name they may bear, in the exercise of judi-cial power. It, of course, applies only when the judge or officer has jurisdiction of the particular case and was au-thorized to determine it. If he transcended the limit of his authority, he necessarily ceases in the particular case to act as a judge, and is responsible for all consequences. But with these limitations the principle of irresponsibility, so far as respects a civil remedy, is as old as the common law itself. The authorities on this subject are almost innumera-ble." *Weaver* v. *Devendorf*, 3 Denio, 120.

But in the present case there is no complaint of any wan-ton or malicious or corrupt or in any way improper motive. Much less is there any complaint of any extra-judicial act. The object of the constitutional provision making " the selectmen and town clerks of the several towns " the sole

judges of the qualifications of electors, was to place that duty beyond the control or interference of any other department of the state government. And even in those states without the peculiar electoral system of Connecticut, a civil action against election officers is not allowed, except for malicious and wanton acts in abuse of their authority. The statutory provisions of Massachusetts in this respect are exceptional. McCrary on Elections, § 494 *et seq.*

*L. Harrison,* contra.

1. The board for admission of electors possesses no arbitrary powers. It is only a quasi judicial tribunal. It is governed by a plain rule prescribed in the constitution. It must construe and carry out that rule according to settled interpretations of language and decisions of the courts, and the members are liable for any plain violations of their duty. It is a fundamental principle that an elector shall not be deprived of his vote. Cooley's Const. Lim., 616. The safety of our government depends upon the protection of the elector in his rights as such. If he is deprived of them he suffers the most grievous wrong. It is not sufficient to tell him he must suffer this wrong and remain remediless until he can show malice on the part of the election officers who have deprived him of his vote. He is entitled to a civil remedy whenever through ignorance, incapacity, prejudice, negligence or wilfulness, he is subjected to the loss of his vote. *Freeman* v. *Selectmen of New Haven,* 34 Conn., 415 ; *Sanders* v. *Getchell,* 76 Maine, 158 ; *Kilham* v. *Ward,* 2 Mass., 236 ; *Gardner* v. *Ward,* 2 id., 244, note ; *Lincoln* v. *Hapgood,* 11 id., 350 ; *Capen* v. *Foster,* 12 Pick., 485 ; *Gates* v. *Neal,* 23 id., 308 ; *Blanchard* v. *Stearns,* 5 Met., 298 ; *Jeffries* v. *Ankeny,* 11 Ohio, 372 ; *Monroe* v. *Collins,* 17 Ohio St., 665 ; *Gillespie* v. *Palmer,* 20 Wis., 544 ; *Vanderpoel* v. *O'Hanlon,* 53 Iowa, 246 ; *Stratford* v. *Sanford,* 9 Conn., 275. The constitution of Connecticut does not protect the selectmen and town clerk against civil actions for wilful, ignorant or plain violations of their duty to any greater extent than do the constitutions or laws of

Maine, Massachusetts, Ohio, Wisconsin or Iowa. The fact that the authority given to them is in the constitution makes the argument for them no stronger than if it were only a part of the statute law. It is only a little more difficult to alter the one than the other, but in all other respects the former is no broader shield than the latter. While this court has held in *Freeman* v. *Selectmen of New Haven*, (supra,) that there is no remedy by mandamus to compel the board to admit an elector, it has suggested that the duties of the board may not be judicial in the strict sense of the word, and while they ought not to be interfered with "so long as they act fairly," this court added—"If they act wantonly or maliciously, they may be liable to the party injured, but not in this form of proceeding." The facts admitted by the demurrer in this case show that the defendants did not act fairly. They show conclusively a wilful denial of his rights to the plaintiff, evidently because he was a student. This was a wanton exercise of power and abuse of authority. While it is not claimed to have been malicious in the ordinary use of that word, it discloses a state of proceedings which this court should not hesitate to review. If this case cannot be inquired into so that this court may, if necessary, differ from the defendants in opinion, then the other provisions of our constitution to support a free and equal suffrage are made void, and every elector is hereafter at the mercy of a partisan majority without appeal and without remedy. The power to "decide on the qualifications of electors" conferred by sec. 5, art. 6, of the constitution, is only a power to decide subject to the rule of the constitution. The constitution enumerates the qualifications; they are not subject to the arbitrary will of the board. The qualifications requisite are age, sex, citizenship, residence for a certain period, ability to read, and character. The board cannot alter these in any manner. They cannot exercise their discretion one iota as to these. Age and sex and citizenship are simple facts. If they arbitrarily find an applicant not of age when he is twenty-one, a female when he is a male, an alien when he is a citizen,

would not this court review the proceedings ? If the applicant can read, and has a good moral character, there being no evidence to the contrary, can the board arbitrarily find otherwise and exclude him ? And if they do, will not this court express its difference of opinion ? What constitutes residence is a simple matter to determine as a question of law. The members of the board are bound to know what the law of domicile and residence is. If they ignorantly or wilfully find that a given state of facts constitutes no residence, when as a matter of law it does, can they reject the applicant and shield themselves in this court under the plea of "judicial authority?"

2. The plaintiff upon the facts was entitled to admission. The only question made was with regard to his residence. The rules of law governing questions of domicile and legal residence are substantially the same, and the cases that apply to one will usually apply to the other. Questions of domicile are raised in connection with the jurisdiction of courts and the settlement of estates. Questions of residence are raised in connection with the holding of office and the right to vote. Both are governed very much by the intention of the party. There can be no iron-clad rule laid down that the intention and the residence can only be shown by particular acts of the party claiming a residence. No particular acts of a party can be said to contradict conclusively the alleged intention of the party, unless such acts clearly show that the alleged intention is false. In every case the acts of the party and the facts in the case must be considered on their merits in connection with the declared intention. But the declared intention should always prevail, unless the acts of the party or the facts in the case clearly show that the declared intention cannot be true. McCrary on Elections, §§ 38–41, 71; *Chase* v. *Miller*, 41 Penn. St., 404; *Miller* v. *Thompson*, 1 Bartlett's Cont. Elec. Cases, 118; *People* v. *Holden*, 28 Cal., 123; *State* v. *Judge*, &c., 13 Ala., 806; *Lincoln* v. *Hapgood*, 11 Mass., 350. The intention of the party is held to be the all important consideration in questions of domicile as well as residence.

*Grant* v. *Dalliber*, 11 Conn., 238; *Salem* v. *Lyme*, 29 id., 80; *Clinton* v. *Westbrook*, 38 id., 12; *Culver's Appeal from Probate*, 48 id., 171; *State* v. *Frest*, 4 Harr., 558; *McDaniel's Case*, 2 Penn. L. J., 310; *The Venus*, 8 Cranch, 278. Every person must have a domicile somewhere. *First Nat. Bank* v. *Balcolm*, 35 Conn., 358; *Abington* v. *North Bridgewater*, 23 Pick., 170. And this rule applies to a single as well as to a married man. *French* v. *Lightly*, 9 Ind., 478. In this case it is admitted that the plaintiff had parted with his residence of origin, for he had no residence with his parents. He had been emancipated four years at least, for he was twenty five years of age, and did not depend on his parents for support. If his residence was not in New Haven, where was it? It was not with his parents; that is admitted. It could not be in any other place than New Haven, for his bodily presence had been in New Haven from September, 1883, to November, 1884. He had no intention to have a domicile anywhere else, for it was his intention to treat New Haven as his residence. He could not hold any former domicile by an intention to return, for it is admitted that it is his intention to go to some indefinite place, or remain in New Haven, as may seem advisible, when his studies are completed.

CARPENTER, J. The plaintiff applied to the board of registration to be admitted an elector. The board heard the evidence as to his qualifications, and refused to admit him; and that is the wrong complained of, for which this suit is brought against the members of the board. A majority of the defendants demurred to the complaint, and on that issue the case was reserved for our advice. The question relates to the residence of the plaintiff. Upon the evidence it seems clear that his only domicile was in New Haven, and that he should have been admitted. If that was the only question involved in the case the demurrer should be overruled; but the question is whether the defendants, acting strictly within their jurisdiction, and without malice or wilful disregard of their duty, can be held liable.

The constitution prescribes the qualifications of electors, and constitutes the selectmen and town clerk of each town the tribunal to decide on those qualifications. In doing so they hear testimony, weigh it, and decide. Thus they act judicially. They are quasi judicial officers. *Freeman* v. *Selectmen of New Haven*, 34 Conn., 415. The general rule is that such officers are not liable for errors or mistakes, but there are exceptions. In Massachusetts it is held that selectmen are liable in such cases without averring or proving malice. In *Lincoln* v. *Hapgood*, 11 Mass., 350, PARKER, C. J., after stating that he had for some time entertained a different opinion, says that " however hard such an action may be against selectmen, it is essential to the rights of the citizen that it should be sustained." The argument is, first, that the citizen has no other remedy; second, that " the good of society, and security against a repetition of the wrong, require that the suffering party should be permitted to resort to this mode of relief "; and third, that a man may otherwise be prevented for his life from exercising a constitutional privilege. In *Capen* v. *Foster*, 12 Pick., 485, SHAW, C. J., says that " it has been decided upon great considerations of public policy that such an action may be sustained."

The same rule prevails in Wisconsin and Ohio. *Gillespie* v. *Palmer*, 20 Wis., 544; *Jeffreys* v. *Ankeny*, 11 Ohio, 372; *Monroe* v. *Collins*, 17 Ohio St., 665. In the Wisconsin case however the defendant was merely a ministerial officer.

We have no disposition to question the validity or strength of the reasoning in these cases, theoretically considered. It is sufficient to say that with nearly seventy years experience under our constitution, it is believed that the evils apprehended have not existed to any considerable extent. Indeed it is believed that if the Massachusetts rule prevailed here, the evils that would arise from increased litigation, subjecting men who, it must be presumed, endeavor honestly and fairly to discharge their official duties, to annoyance and expense, would be greater than any we have hitherto experienced. Viewed in the light of experi-

ence we cannot regard those reasons as sufficient to induce us to depart from the general rule.

For two thirds of a century our system has been in operation, and we are not aware that the records of our courts show any cases of this description. This circumstance, though not in itself a decisive argument, tends strongly to show the almost universal sense of the profession during that time that such an action cannot be maintained.

As a rule, we think the duties devolving upon boards of registration are fairly and honestly discharged. Doubtless it occasionally happens that a man entitled to vote is excluded, or one not entitled to vote is admitted; but so far as such cases result from mistakes it is hard to subject the members of the board to an action.

We think it not politic or wise to expose those upon whom the law casts the burden of ascertaining the qualifications of electors to the annoyance of private suits for errors in judgment. If they act wantonly or maliciously, there may be a private remedy; but that is not this case, as there is no allegation of wanton or malicious conduct.

We think that the general rule which exempts judicial officers from liability should continue to apply to boards of registration so long as they act in good faith and within their jurisdiction.

The Superior Court is advised that the complaint is insufficient.

In this opinion the other judges concurred.