AMERICAN CASUALTY INSURANCE & SECURITY COMPANY *vs.* ORSAMUS R. FYLER, INSURANCE COMMISSIONER.

Hartford Dist., March T., 1891. ANDREWS, C. J., LOOMIS, SEYMOUR, TORRANCE and J. M. HALL, Js.

A writ of mandamus may issue where the duty which the court is asked to enforce is the performance of some precise, definite act, or is one of a class of acts that are purely ministerial and in respect to which the officer has no discretion, and the right of the party applying is clear and he is without other adequate remedy.

It will not be issued where the effect would be to direct or control an executive officer in the discharge of a duty involving the exercise of discretion or judgment.

Application was made by a foreign insurance company to the insurance commissioner of this state to be admitted to do business in the state.

The commissioner had extensive powers and duties in the supervision of the insurance business of the state but no statute in terms made it his duty to admit the applicant, and whether the duty existed was to be determined by a construction of the statutes relating to insurance. Held that the commissioner's construction of these statutes, under which he decided that it was not his duty to admit the applicant, was an exercise of judgment, and that if the court was of opinion that the construction was an incorrect one, it yet could not interfere by way of mandamus.

In an application for a writ of mandamus, the alternative writ must show on its face a clear right to the extraordinary relief demanded, and the material facts on which the applicant relies must be distinctly set forth.

All formal objection to the writ must be taken by a motion that it be quashed.

[Argued March 6th,—decided May 25th, 1891.]

APPLICATION for a writ of mandamus to compel the defendant, insurance commissioner of this state, to admit the applicant, a foreign insurance company, to do business in the state; made to the Superior Court in Litchfield County and by agreement of the parties transferred to Hartford County.

The plaintiff, the American Casualty Insurance & Security Company, was incorporated under the laws of the state of Maryland and located in the city of Baltimore. Its articles of association stated its objects to be as follows:—

" To make insurance upon vessels, freights, goods, wares, and merchandise; upon dwelling-houses, stores, and all kinds of buildings; upon all kinds of property, including credits, profits, and choses-in-action; against injury, damage, loss, or destruction, arising from any unknown or contingent event whatever. To make all insurance connected with marine risks, the risks of transportation of freight, persons and passengers, and the risks of inland navigation. To make insurance against fire, and all insurance connected therewith. To make insurance upon cattle and live stock. To make insurance upon steam-boilers and all engines, machinery and connections operated by steam, against explosions and accident, and to repair, alter, replace, make inspections of, and issue certificates of inspection upon, such boilers, engines, machinery and connections. To make insurance upon elec-

trical plants and appliances and all the connections thereof, against loss and damage caused remotely or directly, and to repair, alter, replace, make inspections of, and issue certificates of inspection upon the same.   To make insurance upon plate-glass against breakage.   To make insurance against the liability of employers or others for injuries to their employees or to others.   To make insurance against loss or damage arising remotely, or directly, from the action of the elements, air, wind, lightning, storm, water, flood, cold, frost, snow, heat, fire, fire-damp, gases, steam, electricity, earthquakes, land-slides, rust, mildew, poisons, decay, insects, animals, wild or domestic ; or by accident, negligence, trespass, theft, burglary, embezzlement, fraud, forgery, breach of trust, tort, or breach of contract.   And in addition to such insurance business, to guarantee the payment, performance and collection of promissory notes, bills of exchange, contracts, bonds, accounts, claims, rents, annuities, mortgages, choses in action, evidences of debt, and certificates of property or values, and the titles to property, real or personal ; to receive on storage, deposit or otherwise, merchandise, bullion, specie, plate, stock, bonds, promissory notes, certificates, and evidences of debt, contracts or other property, and to take the management, custody and charge of real or personal estate or property, and to advance money, securities and credits upon any property, real, personal or mixed, on such terms, and with all such powers of sale and other disposition thereof, as shall be established by the by-laws of the corporation."

The company on the 9th of July, 1890, applied to the defendant, as insurance commissioner of the state, for permission to carry on in the state the following kinds of insurance :—" Against loss and damage caused by accident to persons or property, arising from explosion of steam-boilers or other causes ; employers' liability insurance ; and the insurance of the fidelity of persons employed in positions of trust."   With the application was sent a certified copy of the charter of the company, a sworn statement of its condition, and a certificate of the insurance commissioner of Mary-

land of the payment of its capital and of its compliance with the laws of that state. A hearing was had before the commissioner, and afterwards a re-hearing, and on the 14th of November, 1890, the commissioner wrote the secretary of the company the following letter :—

"Dear Sir: Since the re-hearing granted you I have given careful consideration to your application in behalf of your company for permission to do business in this state. Your charter is an extraordinary one. In view of this, and in view of the fact that its strange provisions have not yet been interpreted by any course of business, I do not feel that I should be justified in assuming the responsibility of admitting you into this state. If you are to be admitted I prefer that the courts should take the responsibility of ordering it."

The present application for a writ of mandamus was immediately after brought. It alleged the incorporation of the company, its powers under its charter, its compliance with the laws of Maryland, its application to the insurance commissioner and his denial of the application, and its compliance with all the laws of this state relative to the admission of foreign insurance companies to do business in the state ; and closed as follows :—"Said company therefore moves this honorable court to issue a writ of mandamus requiring said Orsamus R. Fyler, insurance commissioner as aforesaid, to admit said insurance company to do the kind of business specified in its said application within this state, and to issue certificates of authority to its authorized agents to transact its said business within the same, upon their complying with all laws of the state governing such agents, or to signify cause to the contrary."

In the Superior Court the defendant moved to quash the application, and the court, (*Fenn, J.,*) granted the motion, and the plaintiff appealed to this court.*

FENN, J. Upon consideration of the questions presented

---

* The opinion of Judge FENN, which was given in writing, explains the ground of his decision, and is in other respects of value.

by said motion I am of opinion that the commissioner's duties to determine whether an applicant for a certificate has complied in all respects with the statutory requirements prescribed by this state, and the laws relating to the premises, involving, as it does, not only the direct application of statutory provisions, but the question of their applicability, as far as the nature of the business may admit, that is, how far they are applicable to kinds of business not directly and specifically provided for, are, and must be, not ministerial only, but that they require the exercise of orficial judgment, and rest in his sound discretion, in the exercise of a duty confided by law; and that this court cannot, by mandamus, either control the exercise of that discretion, or determine upon the decision which shall be finally given. But I am further of opinion that when the commissioner does in fact decide, or is satisfied, that all the statutory requirements and laws of this state have been complied with, the limits of all discretion and judicial action have been passed, for I do not think the commissioner is vested with other and further discretionary powers, as, for instance, to determine upon the policy of the state in reference to the admission of such companies. I am, indeed, further of opinion that comity permits a corporation, duly organized under the laws of a sister state, to transact its legitimate business, that is, such business as is authorized by its charter, within the limits of this state, unless such business is expressly or by necessary implication prohibited or restricted by our legislative enactment or by our public policy affirmatively declared by legislative or judicial authority; and however wise it might have been to have declared such policy, enacted such laws, or vested other and additional discretion in the commissioner, which would have warranted a refusal on his part, notwithstanding the compliance with statutory requirements and laws, I am unable to discover it in our jurisprudence. It follows, therefore, that if the commissioner has decided, or is satisfied, that all the statutory requirements and laws have been complied with, his remaining duties are purely ministerial, and his action can be controlled by mandamus.

Such being, in my opinion, the principles applicable, I am nevertheless embarrassed in reaching a decision by what seems to me to be a want of preciseness in the pleadings, which has enabled the parties to argue the questions from different standpoints, reaching, naturally enough, opposite, even if equally logical, conclusions.

The fourth ground of the defendant's motion to quash is, that "it does not appear that the defendant has not proceeded lawfully by deciding that the plaintiff *has not complied with all the laws of this state.*" On the other hand the plaintiff, having alleged such compliance, contends that the defendant, by a motion in the nature of a demurrer, admits such allegation; and further claims that the commissioner's letter of November 14th, 1890, made by reference part of paragraph four, demonstrates that the refusal was not on the ground of any non-compliance on the part of the plaintiff, and that the defendant did not decide that the plaintiff " has not complied with all the laws of this state." Now I am of opinion that a demurrer, or a motion to quash, in no sense admits allegations except in the restricted meaning; that it does not deny, but questions or tests what their legal sufficiency is, or would be, if true. If, in fact, the commissioner's discretion to determine whether the laws of the state have been complied with cannot be regulated, controlled or reviewed by mandamus, it would seem to follow that the commissioner would not be required to make such return to the plaintiff's allegations of such compliance as would directly put in issue, and lead to the trial, in this court, of the very question which the commissioner has sole jurisdiction of, and the Superior Court has therefore no jurisdiction to try. Such a result would seem strange. But would it not follow if it were held that the defendant could not test the legal sufficiency of the allegation, without such test being an admission which would oust the very jurisdiction which it was his object to maintain? As to the letter: I think such weight as it has is evidential, and the issue to be tried is not adapted to the introduction of evidence. If paragraph four, including the letter, is relied on as an allegation of the ground of

the commissioner's refusal, it is certainly very indirect and highly argumentative. If the plaintiff's application had contained a direct, concise averment that the commissioner *found* or *was satisfied* that the plaintiff had complied with all the statutory requirements and laws of this state relating to the premises, but refused a certificate, the issue which would have arisen, whether of law or fact, must, in my opinion, have been certain and determinate, and the difficulty in reaching a result, which I have endeavored to indicate, would not have been experienced.

Inasmuch as this is what the plaintiff claims the fact to be, and such claim formed the basis upon which the plaintiff's argument was made, and as, when the variant standpoints of the plaintiff and defendant became manifest on the hearing the plaintiff's counsel stated that they desired opportunity to amend, if in the opinion of the court such amendment became material, I have concluded to state my views, and to grant leave to the plaintiff, within a reasonable time, if desired, to file such amendment as the plaintiff may deem necessary; otherwise the motion of the defendant will be sustained.*

*W. F. Henney* and *A. L. Shipman*, for the appellants.

1. A corporation organized under the laws of one state may conduct its business in another, subject only to the restrictions of local law. This is the law of comity, and the rights conferred by it are absolute. *People* v. *Fire Asso. of Philadelphia*, 92 N. York, 311; *Merrick* v. *Van Santvoord*, 34 id., 208; *Bard* v. *Poole*, 12 id., 495; *Bank of Augusta* v. *Earle*, 13 Pet., 519; *Cowell* v. *Colorado Springs Co.*, 100 U. S. R., 55; *State* v. *Fidelity & Casualty Ins. Co.*, 39 Minn., 538.

2. The local restrictions upon a foreign corporation seeking to do business in a state must be affirmatively expressed in the local law. "If the policy of the state or territory does not permit the business of the foreign corporation in its limits, it must be expressed in some affirmative way; it cannot be inferred from the fact that its legislature has made

---

* No amendment was filed by the plaintiff.

no provision for the formation of similar corporations, or allows corporations to be formed only by general law." *Cowell* v. *Col. Springs Co., supra.*

3. The policy of the state in this regard must be evidenced by its statutes on that subject. " When the state does not forbid, or its public policy, *as evidenced by its statutes,* is not infringed, a foreign corporation may transact business within its boundaries, and be entitled to the protection of its laws." *People* v. *Fire Asso. of Philadelphia, supra.*

4. There is nothing in the laws of Connecticut, upon the admitted facts set up in the motion for a mandamus, which forbids the applicant company to transact its business here. In *Am. & Foreign Christian Union* v. *Yount,* 101 U. S. R., 352, the court said, after citing *Cowell* v. *Colorado Springs Co.* with approval:—" In harmony with the general law of comity obtaining among the states composing the Union, the presumption should be indulged that a corporation of one state, not forbidden by the law of its being, may exercise within any other state the general powers conferred by its own charter, *unless it is prohibited from so doing, either in the direct enactments of the latter state,* or by its public policy to be deduced from the general course of legislation or from the settled adjudications of its highest court."

5. The company's right to admission by the express terms of the statute depends upon the fact of compliance with statutory requirements and laws, and not at all upon a finding by the commissioner to that effect. The commissioner's powers and duties are fully stated and limited in one comprehensive phrase in the statutes :—" The insurance commissioner shall see that all the laws respecting insurance companies are faithfully executed." Gen. Statutes, § 2820. The marginal note entitles this section, " Powers and Duties of Insurance Commissioner." It is clear, therefore, that he is not to make new laws, or establish a new state policy, or set up new standards of solvency, or to do aught else but to see that the laws as he finds them are enforced. *People* v. *Bell,* 119 N. York, 175; *Daly* v. *Dimock,* 55 Conn., 579. The powers thus conferred differ radically from the powers

given the Kansas insurance commissioner, on which the case of *Dwelling House Ins. Co.* v. *Wilder*, 40 Kansas, 561, turns. His function is to find facts, and he has "the sole and exclusive charge and control over said insurance department." There are undoubtedly matters with regard to which the insurance commissioner is vested with discretion by our statutes. He may examine into the methods of insurance companies, and may require them to discontinue illegal and improper methods of doing business. This power is given him over any kind of insurance business, but it must be exercised *subsequent* to the admission to do business in Connecticut. (§ 2224.) His action in such cases, however, can be reviewed by the Superior Court. (§ 2823.) There are numerous sections in our statute with regard to insurance, but none of the others have any application whatever to the case of a foreign insurance company asking admission into this state. To say that the admission of the applicant company depends upon the finding of the commissioner of the fact of its compliance with the laws, and not upon such compliance, would open the door to the perpetration of the greatest injustice and construe our insurance law into an absurdity. Such a construction would not only violate the plain provisions of the statute, but would be at war with the well-considered decisions of the most intelligent courts of the land. By that construction our courts would be ousted of jurisdiction to construe insurance statutes governing the admission of foreign insurance companies to do business here, and to correct the mistakes of law made by the commissioner. Such a construction would place Connecticut in the singular position of clothing the legal blunders of the commissioner with the dignity of final decisions of our highest court. Every instinct of justice suggests that the question of compliance with our laws in all these particulars should be entertained and determined by courts everywhere charged with the construction of statutes, and that whenever, as in this case, no other remedy is provided, the determination of such questions should be had upon proceedings in mandamus. *Daly* v *Dimock*, 55 Conn., 579; *Seymour* v.

*Ely*, 37 id., 103, 105.  This precise question arose in the case of *State ex rel. Attorney-General* v. *Fidelity & Casualty Ins. Co.*, 39 Minn., 538.  The court said:—"It is said on the part of the respondent that we ought not to entertain the proceeding because the determination of the question whether it should be licensed and admitted to transact its business in this state is committed by law to a branch of the executive department of the state, and that the judicial department of the state has no constitutional control over the action of the executive department.  In this the counsel for the respondent fail to distinguish between the authority of the judicial department to control the action of executive officers, and the power and duty of the courts to determine, in causes before them, the rights of parties, although the legal propriety and effect of the action of executive state officers may necessarily be thus brought in question. . . . .  The insurance commissioner, in granting certificates or licenses to foreign corporations to do business here, acts in a ministerial capacity.  His determination and action are not judicial and final."  See also *Hartford Fire Ins. Co.* v. *Raymond*, 70 Mich., 485; *State* v. *Chase*, 5 Ohio St., 528; *Tennessee & Coosa R. R. Co.* v. *Moore*, 36 Ala., 371; *Pacific R. R. Co.* v. *The Governor*, 23 Mo., 353.

6. When the commissioner acts under a mistake of law, and so refuses to grant the application and to license the agents of the applicant, mandamus will lie.  *State ex rel. N. Eng. Mut. Life Ins. Co.* v. *Reinmund*, 45 Ohio St., 214; *Cincinnati &c. R. R. Co.* v. *County Commissioners*, 1 id., 77, 105; *Citizens' Bank* v. *Wright*, 6 id., 318; *Thomas* v. *Armstrong*, 7 Cal., 286; *Tennessee & Coosa R. R. Co.* v. *Moore*, 36 Ala., 371; *Gilchrist* v. *Collector of Charleston*, 5 Hughes, 1; *People ex rel. Kemp* v. *D' Oench*, 111 N. York, 359; *Chateaugay Ore & Iron Co.* v. *Petimer*, 128 U. S. R., 544.

7. If the court should be of opinion that it is necessary to state affirmatively in the motion for mandamus that the commissioner finds or is satisfied that the applicant has complied with all statutory requirements and laws, then we submit that that fact is sufficiently set up in the motion, on two

grounds :—1st. Paragraphs three and five of the motion fully
cover this point in the statement that the company has com-
plied with all statutory requirements and laws.    If this were
not enough the pleader would have to state in particular that
he had complied with every statutory requirement by setting
out the requirement and alleging compliance.    2d.  The let-
ter of the commissioner of November 14th, 1890, is made
part of the motion, and definitely sets forth the reasons for
rejecting the company's application.    It contains no hint,
even, that he is not satisfied that the company has complied
with all statutory requirements and laws, but bases the
rejection simply on the ground that our " charter is an ex-
traordinary one.

*E. D. Robbins*, for the appellee.

ANDREWS, C. J.    The plaintiff, a corporation organized
under the laws of the state of Maryland, applied to the de-
fendant, who is the insurance commissioner of this state,
for permission to transact in this state insurance business
" against loss and damage caused by accident to any person
or property, arising from explosions of steam boilers or other
causes, employers' liability insurance, and the insurance of
the fidelity of persons employed in positions of trust."    The
defendant heard the application, and at the request of the
plaintiff gave a second hearing.    Then, after consideration,
he declined to grant to the plaintiff the permission it had
asked for.  .The plaintiff thereupon made application to the
Superior Court for a writ of peremptory mandamus, com-
manding the defendant to admit the plaintiff to do in this
state the kinds of business above mentioned.    The defend-
ant accepted service of the application so made to the Supe-
rior Court, and that application, by consent of all the parties,
has been treated as the alternative writ.
   On the return day the defendant came into court and
moved that the alternative writ be quashed.    The court
heard argument, and indicated that the motion ought to be
granted unless the writ should be amended, and gave the

plaintiff time in which to amend.    The plaintiff neglected
to make any amendment and the motion was granted.    The
plaintiff now appeals to this court. .

In any case of mandamus, as the alternative writ is the
foundation of all the subsequent proceedings, it must show
upon its face a clear right to the extraordinary relief de-
manded, and the material facts on which the plaintiff relies
must be distinctly set forth, so that they can be admitted or
denied.    If it does not do this it will be abated or held in-
sufficient on a motion to quash.    All formal objection to the
writ must be taken by a motion to quash.    *Fuller* v. *Plain-
field Academic School,* 6 Conn., 532.    And objections to the
substance may be so taken.    Moses on Mandamus, 202–206 ;
Shortt on Mandamus, 397 ; High on Extr. Remedies, § 522 ;
*Commercial Bank of Albany* v. *Canal Commissioners,* 10 Wend.,
26 ; *State ex rel. Cothren* v. *Lean,* 9 Wis., 279.

The principle upon which persons holding public office
may be compelled by a writ of mandamus to perform duties
imposed upon them by law has been pretty clearly defined
and strictly adhered to in numerous cases in this court and
in courts of other states.    *Freeman* v. *Selectmen of New
Haven,* 34 Conn., 406 ; *Seymour* v. *Ely,* 37 id., '103 ; *Bat-
ters* v. *Dunning,* 49 id., 479 ; *Atwood* v. *Partree,* 56 id., 80 ;
*U. States ex rel. Dunlap* v. *Black,* 128 U. S. R., 40 ; *U. States
ex rel. Redfield* v. *Windom,* 137 id., 636 ; *Kendall* v. *United
States,* 12 Peters, 524 ; *Decatur* v. *Paulding,* 14 id., 497 ;
*United States* v. *Guthrie,* 17 How., 304 ; *Howland* v. *El-
dredge,* 43 N. York, 457 ; *The People* v. *Brennan,* 39 Barb.,
651 ; *Smith* v. *Mayor &c. of Boston,* 1 Gray, 72.

The principle set forth in these authorities is, that a writ
of mandamus may issue where the duty which the court is
asked to enforce is the performance of some precise, definite
act, or is one of a class of acts purely ministerial and in re-
spect to which the officer has no discretion whatever and the
right of the party applying for it is clear and he is without
other adequate remedy ; and that the writ will not issue in
a case where the effect of it is to direct or control an execu-
tive officer in the discharge of an executive duty involving

the exercise of discretion or judgment. The rule is stated very clearly by Mr. Justice BRADLEY in *U. States ex rel. Dunlap* v. *Black, supra.* He says :—" The court will not interfere by mandamus with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require the interpretation of the law, the court having no appellate power for that purpose ; but where they refuse to act in a case at all, or where by a special statute or otherwise a mere ministerial duty is imposed upon them, that is, a service which they are bound to perform without further question, then if they refuse a mandamus may be issued to compel them." The same rule is given in High on Ext. Remedies, § 42, where that author adds :—" Indeed, so jealous are the courts of encroaching in any manner upon the discretionary powers of public officers,. that, if any reasonable doubts exist as to the question of discretion or want of discretion, they will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer." " A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done." *Flourney* v. *City of Jeffersonville,* 17 Ind., 169.

The subject of insurance engages nearly one hundred and forty sections of the General Statutes and covers more than thirty pages of the statute book. All these sections taken together form a complete and symmetrical branch of the executive government of the state which in common speech is called the insurance department. The defendant is at the head of that department. His duties are, generally, that he " shall see that all the laws relating to insurance companies are faithfully executed." This alone vests him with a wide range of discretion and judgment.

But in addition to this general description of his duties there are repeated sections which impose upon him in terms the exercise of discretion. Section 2822 vests him with authority at any time to " examine into the methods of busi-

ness of any company, corporation, association, partnership, or combination of persons, doing any kind or form of insurance business in this state." He may make orders binding upon such companies, and may apply for an injunction to control their business, or for the appointment of a receiver to wind it up. Sections 2829 to 2836 vest him with discretionary powers concerning fire and marine insurance companies. Sections 2857 and 2858 give him like powers concerning life insurance companies. By section 2869 he may apply for a receiver for any life insurance company and for the annulment of its charter. By section 2906 he may revoke the certificate he has issued to any insurance company incorporated by any other state, upon proof of its unsoundness. Section 2834 gives him discretion respecting the admission of fire and marine insurance companies into this state to do business. Section 2846 relates to foreign fire insurance companies; section 2867 to life insurance companies, and section 2893 to assessment insurance companies. Throughout all these sections the authority given to the defendant is administrative, or quasi judicial, rather than ministerial. *Perry* v. *Reynolds*, 53 Conn., 527.

It is admitted that there is no statute or rule of law that in terms makes it the duty of the defendant to admit the plaintiff to do in this state the kinds of business specified in its application. If it is his duty so to admit the plaintiff it is because such duty falls within the ordinary duties of his office; and this must be gathered from the construction of the insurance statutes. The defendant has construed these statutes as requiring, or at least as authorizing, him to refuse the plaintiff's application. The plaintiff insists that such construction is wrong. The whole contention of the plaintiff's counsel is that the statutes of this state respecting insurance, if construed in the light of the policy of this state towards the insurance companies of other states and in the light of state comity, would make it the duty of the defendant to grant the plaintiff's request; and they say that their interpretation of these statutes is too obviously correct to admit of dispute, and that therefore the duty which

they ask that the defendant should perform is purely a ministerial one. This contention, however, involves a contradiction. The construction of a statute is not a ministerial act; it is the exercise of judgment. If it is the duty of the defendant to admit or not to admit the plaintiff to do business in this state according to the interpretation to be put on the insurance statutes, then the admitting or refusing to admit involves the exercise of discretion and judgment. It is precisely the same kind of a duty which selectmen perform in respect to the admission of electors; *Perry* v. *Reynolds*, 53 Conn., 527; or assessors in respect to the liability of property to taxation; *Goddard* v. *Town of Seymour*, 30 Conn., 394. It is not a purely ministerial act and a mandamus ought not to issue.

If the court was of the opinion that the defendant's construction of the insurance statutes was an incorrect one it could not interfere by way of mandamus. That would be to substitute the judgment of the court for the judgment of the officer appointed by law, and would in effect make the court the insurance commissioner instead of the defendant.

" If a suit should come before this court which involved the construction of any of these laws, the court certainly would not be bound to adopt the construction given by the head of a department. And if they suppose his decisions to be wrong they would, of course, so pronounce in their judgment. But their judgment upon the construction of a law must be given in a case in which they have jurisdiction and in which it is their duty to interpret the act of Congress in order to ascertain the right of the parties in the cause before them. The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it by mandamus act directly upon the officer and guide and control his judgment or discretion in the matter committed to his care, in the ordinary discharge of his official duties." *Decatur* v. *Paulding*, 14 Peters, 497. See also *United States* v. *Guthrie*, 17

Howard, 284; *Commissioner of Patents* v. *Whiteley*, 4 Wall., 522; *Gaines* v. *Thompson*, 7 id., 347; *Freeman* v. *Selectmen of New Haven*, 34 Conn., 406.

Tested by the authorities herein brought together it is plain that the alternative writ in this case does not state facts which entitle the plaintiff to a peremptory mandamus, and that the motion to quash was properly granted.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.