HUGH M. ALCORN, STATE'S ATTORNEY, EX REL. ALVAN WALDO HYDE

*vs.*

JOHN M. DOWE, COMPTROLLER

Superior Court   Hartford County   File No. 65588

## MEMORANDUM FILED OCTOBER 29, 1941.

*Robinson, Robinson & Cole,* of Hartford, for the Plaintiff.

*Francis A. Pallotti,* Attorney General, and *Thomas J. Con-roy,* Assistant Attorney General, of Hartford, for the Defendant.

BALDWIN, J. The relator has made application to this court for an alternative writ of mandamus against this respondent as comptroller of the State and the court has, upon the relator's application, issued its alternative writ. The respondent has filed a motion to quash.

The action is brought to secure a determination of the right of the relator to be retired from the service of the State upon his application for retirement made to the comptroller under the provisions of sections 67e to 77e, inclusive, of the 1939 Supplement to the General Statutes.

It appears from the writ that the relator, on or about June 11, 1941, presented his application to the respondent, as comptroller of the State, for retirement from the service of

the State on or before the last day of his term of service as Public Utilities Commissioner, pursuant to the provisions of the statutes above referred to.

It further appears from the writ that at the time this application for retirement was made to the respondent the relator was in the service of the State as Public Utilities Commissioner under an appointment for a term of six years from July 1, 1935, and, also, that he was in the service of the State as a trustee of the Connecticut State Hospital under an appointment for a term of six years from July 1, 1937.

It further appears from the writ that the relator had been in the service of the State in the positions and for the terms as follows: Judge Advocate and Captain of the First Company Governor's Foot Guard from April 5, 1909 to November 11, 1927; State Voting Machine Commissioner from July 1, 1915 to June 30, 1933; Trustee of the Connecticut State Hospital from 1916 to the date of his application for retirement; Major of the First Company Governor's Foot Guard from November 11, 1927 to June 8, 1934, and, Public Utilities Commissioner from November 28, 1934, to the date of his application for retirement.

It thus appears that the relator, at the time of his application for retirement, had held, by appointment, five positions in the service of the State, and had been in continuous service of the State from April 5, 1909—a continuous period of over 32 years.

The following further facts are set forth in the writ: On or about June 16, 1941, the relator delivered to the respondent at the respondent's request, upon a form supplied by the respondent, a full statement of the relator's service to the State with a copy of his birth certificate showing that the relator was born August 21, 1880, and was therefore over the age of 60 years at the date of his application; that on or about September 6, 1939, the relator at the request of the comptroller prepared and delivered to the comptroller, upon a form supplied by the comptroller, a full statement of all of the facts concerning the relator's service to the State for the purpose of forming the basis for any further application for retirement and in accordance with which deductions from the relator's salary should be made, and that from September 1, 1939, the comptroller had regularly deducted an amount

equal to two and one-half per cent from all payments of salary to the relator and continued such deductions to include payment of salary on June 30, 1941, which deductions were for the purpose of application to the retirement fund; that on July 3, 1941, the relator received notice from the respondent that his application had been denied; that the relator was given no opportunity to be heard upon his application and that no reasons have been assigned for its denial.

The respondent, by the alternative writ, "is required and enjoined of you...., you take all necessary and proper action to enter upon your records the retirement of (the relator) from the service of the state as of June 30, 1941, and thereafter draw your orders upon the treasurer....for the retirement salary (the relator) is entitled to receive from and after June 30, 1941, in accordance with the terms of the statute.... or signify cause to the contrary to this court...."

The motion to quash is in eight paragraphs. These paragraphs, in various forms, advance the theory that from the alternative writ it does not appear that under the provisions of the statutes, under which the application for retirement is made, the respondent has the authority to determine the right of the applicant to retirement benefits; that the respondent has the authority to determine the amount of retirement benefits; that his duties are ministerial; that these questions require the construction of statutes, the exercise of discretion and judgment, and that these duties are imposed upon the retirement commissioners under the provisions of section 74e of the 1939 Supplement to the General Statutes.

The substantive part of the statute, applicable to the facts alleged, is found in section 67e, and is as follows: "Any person in the service of the state shall, upon application by himself....be retired, subject to the following conditions as to term of service and age, and shall receive a salary as hereinafter provided:....being a male person, having reached the age of fifty-five....after thirty years of service, at a salary equal to sixty per cent of his average salary for the five years next preceding his retirement."

Each of the five positions that the relator held between April 5, 1909, and the date of his application for retirement were positions "in the service of the state" and each position carried compensation or a salary, except the position as trustee

of the Connecticut State Hospital. The question of compensation or salary for service in any position of service to the State, however, has no bearing upon the right of one to retire from service. The statute, in relation to the right to retire, provides that "Any person in the service of the state shall, upon application by himself....be retired", and the provisions immediately following provide for the beneficial conditions under which an applicant for retirement is to be retired.

The provision quoted is clear and capable of but one construction; it involves no discretion or judgment on the part of any person or official; it provides a right that any person in the service of the State, upon application under the condi tions described in the provisions immediately following, is en· titled to be retired under, and it is mandatory. The provisions that immediately follow the declaration of the right to retire provide the simple mathematical formula' to be employed to determine the benefits the retiring employee or official is en· titled to upon retirement and no discretion or judgment is here required since under these provisions nothing but a sim· ple mathematical problem is presented.

The only relation the question of the compensation or salary of one applying for retirement from the service of the State to the matter is, that under section 71e of the Act, the amount of the contribution the comptroller shall deduct for the pur· pose of the retirement fund from the compensation or salary of one in the service of the State is determined, and for the further purpose of use with the length of time of such service to determine the retirement benefits the retiring one is entitled to receive.

Section 69e provides: "Each application for retirement shall be made to the comptroller, who shall draw his orders, upon the treasurer for any amounts the applicant is entitled to receive." There is nothing in this section that requires the exercise of discretion or judgment. It is clear and it is man· datory. The amounts of the orders to be drawn by the comptroller upon the treasurer are determined by the mathematical formula provided in the Act and herein referred to. When a matter is to be determined by a mathematical formula exclusively it excludes the use of discretion or judgment.

It is the claim of the respondent that the determination of the amount of the retirement salary the relator may be en-

titled to receive and the acts required to be performed in connection therewith are not ministerial but are discretionary and are to be performed by the retirement commissioners under the provisions of section 74e of the Act, and he rests this claim upon the following provision in this section: "There shall be five commissioners who shall be responsible for the carrying out of the provisions of this part." The section then provides: "They shall meet at least quarterly and shall make a biennial report to the governor." It then proceeds to provide the source from which three of the commissioners are to be selected, the method of appointments and the term of service. The Act goes no further in conferring or describing duties of the commissioners. The language employed is not appropriate from which one can find authority in the commissioners to use discretion in determining the right of one to retire from the service of the State nor the amount of retirement salary one retiring is entitled to receive.

The Legislature has determined the right of one to retire from the service of the State, the method by which it shall be accomplished and the salary one shall receive upon retirement; it has exercised its discretion and in clear terms imposed upon the respondent certain duties to perform which, in respect to the matter under consideration, are purely ministerial and not discretionary.

In *State ex rel. Foote vs. Bartholomew,* 103 Conn. 607, at page 614, the court said: "This court, in *American Casualty Ins. & Sec. Co. vs. Fyler,* 60 Conn. 448, 460, 22 Atl. 494, approves the following definition of a ministerial act, quoting from *Flournoy vs. City of Jeffersonville,* 17 Ind. 169: 'A ministerial act is one which a person performs in a given state of facts, . . . .in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.'" A discretionary act or duty is one which permits of more than one conclusion in a certain set of circumstances. Such a duty includes the idea of some possibility of choice or selection.

" 'Discretion implies that in the absence of positive law or fixed rule the judge is to decide by his view of expediency or of the demands of equity and justice.'" *Goodwin vs. Prime,* 92 Me. 355, 362, 42 Atl. 785, 787, quoting from *State vs. Wood,* 23 N.J.L. 560, 564.

The provisions of the statute having relation to this matter are expressed in language free from any ambiguity and establish the existence of definite rights and mandatory duties with such clarity as to dispose of any question of discretion on the part of the respondent. The situation differs in no way from that presented in *State vs. Staub,* 61 Conn. 553, where the court, at page 569, said: "But when a claim is liquidated in the sense that its amount is fixed by operation of law, it is difficult to see how the comptroller can use any discretion in respect to it. When the law fixes definitely the amount of any claim, and also fixes the time and manner of its payment and the person to whom it is due, and the claim is presented to the comptroller by that person and at that time, he has in respect to it 'no discretion to exercise, no judgment to use, and no duty to perform,' but to draw his order in payment of it. The duty to draw the order then falls exactly within the definition of a ministerial duty or act as given above."

The act or acts or duty required of the respondent in this matter are purely ministerial.

The motion to quash is denied.