1904.] People ex rel. P. S. L. Assur. Soc. v. Miller. 227

N. Y. Rep.]                     Statement of case.

The People of the State of New York ex rel. The Prov-
ident Savings Life Assurance Society, Appellant, v.
Nathan L. Miller, as Comptroller of the State of New
York, Respondent.

1. Tax — Franchise Tax Imposed upon Domestic Life Insurance
Companies — L. 1901, Ch. 118, Not Retroactive. Section 187 of the
Tax Law (L. 1896, ch. 908, amd. L. 1901, ch. 118), authorizing an annual
tax upon the gross amount of premiums received during the preceding
calendar year by every domestic insurance company, for the privilege of
exercising corporate franchises and of carrying on business in this state,
to be paid over before the first day of June in each year, is not retroactive,
but prospective in its operation, and imposes a tax not upon premiums
derived from contracts made prior to the time the statute took effect, but
upon future business only.

2. Basis for Computation of Tax. The statute not going into effect
until October 1, 1901, the provision therein that the tax should be based
upon the amount of premiums received during the preceding calendar
year must refer to the calendar year commencing January first thereafter,
since if the year commencing with the preceding January was intended
the law would be retroactive, the tax reacting during nine months when
no law authorizing it was in existence.

*People ex rel. Provident Savings Life Assur. Society* v. *Miller*, 88 App.
Div. 218, reversed.

(Argued April 27, 1904; decided October 18, 1904.)

Appeal from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered
November 17, 1903, which confirmed a determination of the
defendant denying the relator's application for a revision and
readjustment of an assessment for franchise taxes upon pre-
miums collected during the year 1901.

The facts, so far as material, are stated in the dissenting
opinion.

*Andrew Hamilton* for appellant. The tax should be laid
only upon premiums received from policies issued during the
calendar year for which it is imposed or first year premiums.
All other premiums are collectible by virtue of the contracts

228 People ex rel. P. S. L. Assur. Soc. v. Miller. [Oct.,

Points of counsel. [Vol. 179.

of insurance of prior date and are not dependent upon any franchise or privilege to do business. (*People ex rel.* v. *Wemple*, 129 N. Y. 558; *Doyle* v. *C. Ins. Co.*, 94 U. S. 535; *People* v. *H. Ins. Co.*, 92 N. Y. 344; 134 U. S. 594; *A. E. Co.* v. *Ohio*, 166 U. S. 224; *M. S. Bank* v. *Rochester*, 37 N. Y. 365; *People* v. *S. L. Ins. Co.*, 78 N. Y. 114; *Ins. Co.* v. *Statham*, 93 U. S. 24; *Ins. Co.* v. *Heidel*, 8 Lea, 498; Judson on Taxation, § 175; *State* v. *C. M. Ins. Co.*, 106 Tenn. 282; *People ex rel.* v. *Roberts*, 22 App. Div. 282; *People ex rel.* v. *Roberts*, 30 App. Div. 150; *People ex rel.* v. *Roberts*, 8 App. Div. 201.) The amendment is not retrospective and the franchise tax was not in force prior to the date that it was enacted, and the date when it went into effect. (*Matter of Howe*, 112 N. Y. 100; *Rice* v. *Ruddiman*, 10 Mich. 125; *Matter of D. & H. Co.*, 129 N. Y. 105; *Matter of Van Kleeck*, 121 N. Y. 107; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *G. S. Bank* v. *Suspension Bridge*, 159 N. Y. 369; *Benton* v. *Wickwire*, 54 N. Y. 229; *Stone* v. *Bd. of Suprs.*, 166 N. Y. 91; *People ex rel.* v. *Willis*, 35 N. Y. S. R. 180; *C. T. Co.* v. *N. Y. C. R. R. Co.*, 15 N. Y. S. R. 178; *Clark* v. *Norton*, 49 N. Y. 243.)

*John Cunneen, Attorney-General (William H. Wood* on the brief), for respondent. The comptroller rightly considered the amount of premiums received for the year 1901 in determining the tax. (*H. Ins. Co.* v. *New York*, 134 U. S. 594; 92 N. Y. 328; *People ex rel.* v. *Miller*, 85 App. Div. 211; *Society for Savings* v. *Coite*, 6 Wall. 59; *Provident Inst.* v. *Mass.*, 6 Wall. 611; *Hamilton County* v. *Mass.*, 6 Wall. 633.) The tax imposed by the law was not retrospective. It was a tax for the privilege of future exercise of corporate functions measured by past realization of benefits. (*People* v. *S. V. H. G. Co.*, 92 N. Y. 389.) In computing the tax it was proper to take the gross amount of premiums received during the preceding calendar year, without regard to when the policies were issued. (*M. L. Ins. Co.* v. *Durenkamp*, 66 S. W. Rep. 1125.)

O'Brien, J.   I think the tax in this case, or at least a considerable portion of it, was improperly imposed and should have been revised and readjusted by the comptroller upon the petition of the relator.   I will state only very briefly my reasons for this conclusion.

(1) The tax can be imposed only under the authority of chapter 118 of the Laws of 1901.   The relator is a domestic corporation and within the general scope of the statute, but the question is how and to what extent the tax can be lawfully imposed.   It has been imposed upon the receipts of the company derived from past transactions and pre-existing contracts.   The statute designates the burden as one ."for the privilege of exercising corporate franchises," and, consequently, it can be laid only upon such business as depended upon the exercise of such franchise.   It could not have been lawfully imposed upon the receipts of past contracts that the company had the right to collect and enforce by virtue of the contract alone and that did not depend upon the exercise of the franchise.   These contracts would survive the destruction of the franchise by the dissolution of the corporation.   The collection by the company of the premiums upon insurance contracts entered into before the enactment of the statute was not the exercise of a franchise privilege, but depended upon an absolute and indestructible contract right.   The tax is purely a franchise tax and nothing else as to domestic corporations.   The tax imposed "for carrying on business in their corporate or organized capacity" applies only to foreign corporations deriving their franchises from other sovereignties.   The statute went into effect October 1st, 1901.   There is nothing in the statute that warrants the imposition of the tax upon premiums derived from contracts made prior to that date and upon every principle of justice and sound construction the tax could be imposed only upon future business.   If these contracts would survive the destruction of the franchise, as they clearly would, and be good without it, then the tax in question does not reach them unless it is made to operate retroactively, and every fair intendment is against such con-

struction. The tax in question being a franchise tax does not, within the terms of the statute, or by any reasonable construction, become a burden upon contracts made before the law was enacted and that exist and may be enforced entirely independent of the corporate franchise. Contracts of life insurance once made exist solely by virtue of the right to contract at the time they were entered upon by the parties, and not by virtue of any privilege or franchise from the state. (*People* v. *O'Brien*, 111 N. Y. 1.) When a corporation merely does what it has the right to do without the consent of the state it is not in any legal or proper sense exercising a franchise, and hence past transactions are not within the scope of the statute, since effect can be given to all of its provisions by limiting its operations to future transactions.

(2) The statute under which the tax was imposed had no existence until October 1st, 1901. It speaks only from that day, and of future transactions of the company. That was the day on which the statute commenced to operate upon the relator, and no tax can be imposed upon any business transacted prior to that day. The statute is not in terms retroactive, but clearly prospective in its operation. No law can properly be held retroactive unless so expressed. In the absence of such clear declaration laws operate only in the future and upon future transactions. If there was no other guide the first day of October, 1901, was the day fixed by the statute for the relator to commence to pay. (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51.) But by plain implication the legislature fixed that day three months after the law went into operation; that is to say, on January 1st, 1902, since it provided for an annual tax calculated for the *calendar year*. The calendar year referred to in the statute must necessarily mean the first calendar year occurring after the law took effect; that is to say, the year 1902. The calendar year 1901 could not have been intended, since that would make the law retroactive — a construction that is always avoided, unless clearly expressed — and the tax would react on the privilege during nine months when no law for taxing the relator was

1904.] People ex rel. P. S. L. Assur. Soc. *v.* Miller. 231

N. Y. Rep.]      Dissenting opinion, per Vann, J.

in existence. The first calendar year, therefore, for which the tax was to be imposed was the year commencing January 1st, 1902. Thus construed the law is clear, natural and not violative of any principle of law or equity applicable to the exercise of the taxing power.

The order should be reversed and the account remitted to the comptroller for revision and correction, limiting the tax to new policy premiums commencing with those collected during the calendar year 1902, with costs to appellant.

Vann, J. (dissenting). During the calendar year 1901, the relator, a domestic corporation engaged in the business of life insurance, received for business done in this state premiums amounting to $619,346.01. In April, 1902, the comptroller assessed upon the relator a franchise tax of $6,193.46, or one per cent. of said sum, pursuant to the provisions of the Tax Law as amended during the year 1901. An application for a revision of the tax was denied by the comptroller and a writ of certiorari issued to review his decision resulted in the confirmation thereof by the unanimous vote of the Appellate Division.

The questions presented depend upon the construction of section 187 of the Tax Law as amended on the 16th of March, 1901, although the amendment did not take effect until the first of October following. (L. 1901, ch. 118.) The Tax Law, as originally enacted in 1896 and as amended in 1897, imposed a franchise tax on certain insurance corporations, but none upon life insurance corporations. (L. 1896, ch. 908 ; L. 1897, ch. 494.) In 1901 section 187, which relates " to franchise taxes of insurance corporations," was rewritten and its provisions were largely extended. It now provides for " an annual state tax " upon life insurance corporations, among others, " for the privilege of exercising corporate franchises or for carrying on business in their corporate or organized capacity within this state equal to one per centum on the gross amount of premiums received during the preceding calendar year for business done in this state, whether such premiums were in

the form of money, notes, credits, or any other substitute for money, * * * " This tax is required to " be paid annually into the treasury of the state," on or before the first day of June, in each year by all insurance corporations, whether domestic or foreign, with certain exceptions not now important. By this amendment for the first time a franchise tax was laid upon life insurance corporations and the tax was measured by the gross premiums, which in the language of the act " include, in addition to all other premiums, such premiums as are collected from policies subsequently cancelled and from reinsurance." Each corporation affected, and it is conceded that the relator is one, is required on or before the first of March in each year to make a written report to the comptroller of its condition at the close of its business on the thirty-first of December preceding, " stating the entire amount of premiums received on business done thereby in this state during the year ending with such day, whether the premiums were in money or in the form of notes, credits or other substitutes for money." (§ 187.) The tax thus imposed is " due and payable into the state treasury on or before the first day of June of each year." (§ 194.)

The tax thus imposed, as we have distinctly held, is not a tax upon property but upon the privilege of exercising the corporate franchises and carrying on business in a corporate capacity in this state. (*People ex rel. Mutual Trust Co. v. Miller*, 177 N. Y. 51.) It is purely and exclusively a franchise tax payable on the first of June in each calendar year and is measured by the amount of premiums received on business done in this state during the preceding calendar year. The mistake is not unusual of calling this a tax upon property because it is measured by property. Thus it is said that the tax in question was imposed to some extent upon life insurance contracts made before the law providing for the tax was enacted, and it is urged that receipts derived from past transactions and pre-existing contracts are not liable to taxation as future business only can be taxed. The tax under consideration was imposed for the privilege of carrying on a life insurance business in

this state during the calendar year 1902. It was not imposed upon pre-existing contracts, or upon moneys received in the past or to be received in the future, but for the privilege of doing business and exercising the corporate franchises during the year 1902. The amount of the tax was determined by the premiums received during the year 1901, just as it might have been measured in any other convenient way, for the legislature had entire control of the subject. A tax may be measured by past transactions, without being imposed on business done in the past. The tax in question was not laid upon the receipts of 1901, which would have been a tax on property, but on the privilege of carrying on business as a corporation during 1902, which is a tax upon franchises. The legislature could have measured the tax by apportioning it in accordance with the receipts during the current year for which it was imposed, or during the preceding year, or during any year in the past selected as a standard. The statute is in no sense retroactive, for while it was passed on the 16th of March, 1901, and took effect on the 1st of October in the same year, it provided no tax for any part of that year but simply and wholly for the next year. The purpose of postponing the effect of the act was to create a uniform system based on the calendar year and applicable to all insurance corporations, some of which had theretofore been required to make their annual report to the comptroller at a date which would conflict with the provisions of the amended act if it had taken effect at the date of its enactment. (L. 1896, ch. 908, § 189.) The business done during the year 1901 was referred to simply to measure the tax and for no other purpose. The act does not impose a tax for any period preceding its passage. The tax is laid for the year commencing on the first of January, 1902 and is payable on the first of June, 1902, so that the statute does not reach back to any period of time preceding its passage, but provides for future taxation exclusively.

The question is raised whether renewal premiums paid during the year 1901 represent any part of the business done during that year within the meaning of the statute. In trans-

acting life insurance business there may be a single premium paid in advance for the entire life of the policy, but this is unusual as the custom is to pay annual premiums and sometimes semi-annual, quarterly or even monthly premiums. The contract provides that these premiums must be paid in advance as a condition of continuing the policy in force for another year or for the period for which they are paid. Hence such premiums are known as renewal premiums, because they renew and continue the policy in force for another year or another period. Thus we reach the question whether renewal premiums, collected by life insurance companies in the ordinary course of business, are a part of " the gross amount of premiums received during the preceding calendar year for business done in this state."

A corporation can do no business, legitimately, except by the exercise of its franchise. Whatever it does which is lawful, is done by virtue of its franchise, for it can neither exist without a franchise, nor act without exercising its franchise. Every act done by the lawful exercise of its franchise is the transaction of corporate business, for " exercising corporate franchises " and " carrying on business " in a " corporate or organized capacity " mean the same thing under the statute before us. Is not the collection of renewal premiums part of a life insurance business? If they are not paid the policy terminates and the corporation ceases to do business so far as that policy is concerned, but if the renewal premium is collected the policy continues in force and the company keeps on doing business and furnishing insurance through that policy. (*People ex rel. Cont. Ins. Co.* v. *Miller*, 177 N. Y. 515, 519.) The test is whether the collection of renewal premiums year by year is to any extent an exercise of the corporate franchise, or is any part of the business carried on in a corporate capacity. As a corporation can do no business legally except as authorized by its charter or franchise, expressly or impliedly, whatever it does under the authority of its franchise is the transaction of corporate business. It cannot collect money that belongs to it, or deposit it in a bank, or pay it out,

without exercising its corporate franchise. If its life is taken by the legislature so that it cannot act itself, the title to its property vests in its trustees then in office in trust for creditors and stockholders, and they wind up its affairs, but so long as its franchise continues in force, every lawful act done by it is an exercise of its franchise. (*People* v. *O'Brien*, 111 N. Y. 1.) Therefore, the collection of renewal premiums annually, which is impliedly authorized by the charter of every life insurance company, is to some extent an exertion of the corporate franchise and the exercise of the privilege which is the consideration for the tax. The renewal premiums are part of " the gross amount of premiums received " during any given year, and hence constitute part of the sum selected by the legislature to measure the tax for the succeeding year.

I dissent from the judgment about to be pronounced and vote to affirm the order appealed from, with costs.

GRAY, HAIGHT and WERNER, JJ., concur with O'BRIEN, J.; BARTLETT, J., concurs with VANN, J.

Order reversed, etc.