THE STATE OF CONNECTICUT EX REL. THE METROPOL-
ITAN LIFE INSURANCE COMPANY *vs.* THERON UPSON,
INSURANCE COMMISSIONER.

THE STATE OF CONNECTICUT EX REL. THE NEW YORK
LIFE INSURANCE COMPANY *vs.* THERON UPSON, IN-
SURANCE COMMISSIONER.

First Judicial District, Hartford, May Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and CASE, Js.

Mandamus will not lie to control the determination of an officer in a
matter requiring the exercise of his judgment and discretion,
even upon questions of law.
In 1901 the legislature of New York passed a law taxing the premium
receipts of life insurance companies derived from business in that
State, and this law, by virtue of the reciprocity provision of
§ 2450 of the General Statutes of this State, was applied here to
New York life insurance companies transacting business in this
State. Under a construction of this law which the Court of Ap-
peals in October, 1904, held to be erroneous, taxes had been as-
sessed and collected in the meantime both in New York and Con-
necticut to an amount considerably in excess of that which the
law justified; and accordingly in 1905 the General Assembly of
this State, upon application of the relator and other New York
life insurance companies, passed a resolution authorizing the
board of control to appropriate an amount not exceeding
$75,000, for the purpose of refunding to such companies such
sums paid by them as taxes upon premiums received·from busi-
ness transacted in this State from 1901 to 1904, "as the insur-
ance commissioner of Connecticut shall determine should be so
refunded under the provisions of existing law, and shall so cer-
tify to the comptroller." *Held* that the duty imposed upon the
insurance commissioner by this resolution was not one which
merely required the performance of a single, definite act in re-
spect to which he had no discretion, viz., the ascertainment and
certification of the aggregate amount of overpayments, as con-
tended by the relator, but, on the contrary, was one which called
for the exercise of the commissioner's judgment in deciding how
much, if any, of such overpayments ought, in his opinion, under
existing laws, to be repaid; that in reaching his decision it was
proper for him to consider the policy of this State as manifested
by its reciprocity laws and also the laws of New York in respect

to the possibility of a recovery by the Connecticut companies in that State of the amounts overpaid by them; and that his determination of these questions could not be controlled by or reviewed upon mandamus proceedings.

Argued May 3d—decided June 8th, 1906.

APPLICATION for a writ of mandamus requiring the respondent to determine what sums of money paid by the relator as taxes on its business in this State should be refunded to it under existing law, brought to the Superior Court in Hartford County and tried to the court, *Robinson, J.*, upon the respondent's motion to quash the alternative writ; the court granted the motion to quash and rendered judgment for the respondent, from which the relator appealed. *No error.*

By stipulation of the parties the companion case of State *ex rel.* New York Life Insurance Company *v.* Upson, Insurance Commissioner, which involved the same issues, was heard and determined by this court upon the record in this cause.

*John K. Beach* and *Harry G. Day*, for the appellant (relator).

*William F. Henney* and *William A. King*, Attorney-General, for the appellee (respondent).

HALL, J. The following facts are alleged in the application and in the alternative writ of mandamus.

The Metropolitan Life Insurance Company of New York, having been duly admitted to transact business in this State, paid to this State in 1902 the sum of $12,473.67, in 1903 the sum of $11,998.32, and in January, 1904, the sum of $10,400.46, as a tax of one per cent. upon premiums received from business transacted in this State in the years 1901, 1902 and 1903, respectively, from policies written prior to January 1st, 1902. These sums were so paid upon the demand of the insurance commissioner of this State under the claimed authority of § 2450 of the General

Statutes, and because the same tax was exacted by the comptroller of the State of New York from Connecticut insurance companies transacting business in that State, under the claimed authority of chapter 118 of the New York Laws of 1901, p. 297, and of an opinion of the Attorney-General of the State of New York.

In October, 1904, the Court of Appeals of New York decided that said chapter 118 of the New York Laws of 1901, did not impose such tax upon premium receipts from policies written prior to January 1st, 1902, but only upon such receipts from policies written subsequent to that date; and said sums so paid by the relator were therefore wholly in excess of any premium tax imposed upon, or collectible from, said company. These sums have been paid over to the treasurer of the State and are now in possession of the State.

After said decision of the Court of Appeals of New York, certain life insurance companies of New York, which had paid similar premium taxes, applied to the General Assembly of this State for relief, and at its January session, 1905, the following joint resolution was passed:—

"CONCERNING THE REFUNDING OF CERTAIN TAXES PAID TO THE STATE BY FOREIGN LIFE IINSURANCE COMPANIES.

"*Resolved by this Assembly:* That the board of control is hereby authorized to appropriate an amount not exceeding in the aggregate the sum of seventy-five thousand dollars, said sum to be in addition to the total amount to which said board of control is limited by law or otherwise authorized to make appropriations, for the purpose of refunding to life insurance companies of the state of New York such sums paid by such companies as taxes upon premiums received from business transacted in the state of Connecticut during the years 1901, 1902, 1903 and 1904, as the insurance commissioner of Connecticut shall determine should be so refunded under the provisions of existing law and shall so certify to the comptroller." 14 Special Laws, p. 1084.

After the passage of this resolution the relator applied to the respondent insurance commissioner to determine the amounts paid by it, as taxes on premiums received from policies written prior to January 1st, 1902, upon business transacted in this State during the years 1901, 1902 and 1903, and to certify the same to the comptroller as the sums which should be refunded to it; and although upon the hearing upon such application the sums above stated as the amounts paid as taxes upon premiums received from policies written prior to January 1st, 1902, for the years 1901, 1902 and 1903, were verified and found to be correct by the insurance commissioner, he refused to determine and certify as requested, and held that by virtue of § 3606 of the General Statutes of this State, and § 195 of chapter 908 of the New York Laws of 1896 (Vol. 1, p. 867), New York life insurance companies transacting business in Connecticut during said years 1901, 1902 and 1903 were obliged, as a condition precedent to any refunding of such overpaid premium tax upon the business transacted in this State during said years, to make application for such refunding within one year from the receipt of each annual bill for taxes.

No New York company, excepting the Mutual Life Insurance Company of New York, had made any such application, and upon its application the insurance commissioner has determined and certified to the comptroller, as the sums which should be refunded to the Mutual Life Insurance Company, so much of said premium taxes paid by said company upon business transacted in this State during the years 1901 and 1902 as was paid upon premium receipts from policies written prior to January 1st, 1902.

In accordance with the prayer of the application, the alternative writ required the insurance commissioner to determine and certify to the comptroller, as sums which should be refunded to the relator under the provisions of existing law, so much of the premium taxes paid by the relator upon business transacted in this State during the years 1901, 1902 and 1903, as was paid upon premiums re-

ceived from policies written prior to January 1st, 1902, or show cause to the contrary.

The motion to quash, which was sustained by the trial court, alleged in substance that the writ was insufficient, because it appeared that in refusing to determine and certify, as required by the alternative writ, the insurance commissioner was performing a function and duty of his office and exercising his official judgment and discretion, and because it did not appear that in so refusing to determine and certify he had not proceeded lawfully.

It is neither alleged nor claimed that the insurance commissioner has failed to determine and certify what sums, paid by the New York companies as taxes upon premiums received from business transacted in this State during the years in question, should in his judgment be refunded under existing laws. His only alleged or claimed neglect of duty is his refusal to determine and certify, as the sums to be refunded, the full amount of the taxes paid by the relator during said years upon premiums received from policies issued prior to January, 1902.

The real contest between the parties is upon the question of what duty the insurance commissioner was required to perform by the resolution of the General Assembly of this State in 1905. The relator claims that it is one requiring the respondent to perform a definite act, in respect to which he had no discretion, namely, to determine and certify, as the amount to be refunded, the amount of taxes proved to have been overpaid during said years; that is, the amount proved to have been paid during said years upon premiums received from policies issued prior to January 1st, 1902. The respondent insists that the duty imposed upon him by the resolution is one calling for the exercise of his own judgment, namely, the duty of deciding what sums, if any, of the overpaid taxes ought in his opinion, under existing laws, to be refunded. If the relator is right in its interpretation of the resolution, mandamus will lie against the insurance commissioner; if the respondent's construction of the resolution is the correct one, it will not. *Seymour* v.

*Ely*, 37 Conn. 103 ; *American Casualty Ins. Co.* v. *Fyler*, 60 Conn. 448, 459, 22 Atl. 494.

The conditions which led to the overpayment by the relator and other New York insurance companies, of premium taxes, and those which apparently induced the passage by our General Assembly of said resolution of 1905, were these : By the provisions of chapter 118 of the Laws of New York of 1901, an annual tax of one per cent. upon the gross amount of premiums received during the preceding year for business done in that State was imposed upon insurance companies as a tax for the privilege of exercising their corporate franchises in that State. By § 2450 of the General Statutes of this State, insurance companies incorporated in any other State and transacting business here were required to pay to this State the same fees and taxes as were imposed by such other State upon similar companies organized under the laws of this State and transacting business in such other State.

In May, 1902, and 1903, and in January, 1904, the relator, in compliance with said laws, paid to this State a tax of one per cent. upon the premiums received for business transacted in this State in the preceding years respectively, including premiums from policies issued prior to January 1st, 1902.

In October, 1904, in the case of *People ex. rel. Provident Savings Soc.* v. *Miller*, 179 N. Y. 227, 71 N. E. 930, the Court of Appeals of New York held, in effect, that the tax imposed by the law of that State was purely a franchise tax ; that the collection by an insurance company of premiums upon insurance contracts entered into before the New York premium tax law of 1901 went into effect was not the exercise of a franchise privilege, and that therefore said law of 1901 did not impose a tax upon premiums received after January 1st, 1902, which were paid upon policies issued before that date. From this construction placed upon the New York statute it followed, not only that Connecticut companies had overpaid their legal premium taxes upon business transacted in New York State,

but also that New York companies had overpaid their premium taxes upon business transacted here.

It does not appear that the legislature of New York has taken any action toward restoring to Connecticut companies the amounts so overpaid by them. Apparently the only means of relief open to them is that afforded by § 195 of the New York Laws of 1896 (Vol. 1, p. 867) under the provisions of which the comptroller of that State, upon the application of a taxpayer, may within one year after notice to the taxpayer of his account as audited and stated, correct charges for taxes not lawfully made or exacted, and resettle the account according to law. Under the provisions of this section Connecticut companies might, perhaps, during the two months of 1904 following the decision of *People ex rel. Provident Savings Soc.* v. *Miller*, have obtained relief for their overpayment of premium taxes for the year 1903. While we have in this State no law exactly corresponding to said § 195 of the New York Law, § 3606 of our General Statutes provides that when any other State shall impose any obligation, prohibition, or restriction upon insurance companies of this State transacting business in such other State, like obligations, prohibitions, and restrictions are imposed upon similar companies of such other State transacting business in this State. Under these circumstances certain New York life insurance companies, which in the years named had paid taxes in this State upon premiums received from policies written prior to January 1st, 1902, applied to our General Assembly for relief, with the result that the joint resolution of 1905 above set forth was passed.

This resolution contains no express direction that the taxes overpaid by the New York companies in the years stated, or any part of such overpayment, shall be refunded, or that any sum shall be appropriated for that purpose. A finding by the insurance commissioner that during said years the relator had paid to this State premium taxes to the amount stated in the alternative writ, in excess of the sum which the law required to be paid, and a certification

State ex rel. Metropolitan Life Ins. Co. *v.* Upson.

of that fact to the comptroller, would certainly not be a literal compliance with the express requirement of the resolution.   By the language of the resolution the insurance commissioner, in so far as he is directed to certify to anything, is only directed to certify to the comptroller, " such sums paid by such companies . . . as [he] *shall determine should be so refunded* under the provisions of existing law." These words very aptly describe a submission by the General Assembly to the decision of the insurance commissioner, of the question of what sums, if any, of the overpayments of taxes to this State by the New York companies during the stated years (and the amount of such overpayment was evidently readily ascertainable and apparently not disputed) ought, in view of existing laws, to be refunded to said companies.   Manifestly the General Assembly did not intend to have the insurance commissioner decide what sums existing laws entitled the companies to have refunded.   It was well known that there was no existing law requiring the refunding of such overpayments, or giving to the insurance companies any legal right to recover them.   If the General Assembly had intended to require the insurance commissioner to merely ascertain and certify to the comptroller the amount of the overpayments to this State resulting from the decision of the New York court in *People ex rel. Provident Savings Soc.* v. *Miller*, 179 N. Y. 227, 71 N. E. 930, we should look for very different language in the resolution from that employed.   We should in that case expect to find the board of control authorized to appropriate the sum named in the resolution, for the purpose of refunding to the New York companies such sums paid, etc., as the insurance commissioner should find and certify had, under the provisions of existing laws, been unlawfully paid or exacted ; or such sums as had been paid in excess of the lawful taxes ; or as he should find and certify had been paid as taxes upon premiums received from policies written prior to January 1st, 1902.

We find nothing in the circumstances under which this resolution was passed to satisfy us that the General As-

sembly intended to impose upon the insurance commissioner any different duty from that which we have said is aptly described by the language of the resolution, namely, the duty of deciding and certifying the sums which in view of existing laws ought to be refunded. The New York companies were before our legislature asking that the taxes, which by reason of the decision in *People ex rel. Provident Savings Soc.* v. *Miller* had been illegally exacted from them by this State during certain years, be returned to them. It appeared from the same decision that taxes had been, during the same years, unlawfully exacted by New York State from Connecticut companies. It had been the policy of this State, as shown by our statutes cited above, to impose the same taxes and restrictions upon the insurance companies of other States transacting business here as were imposed by such States upon Connecticut companies transacting business in such States. In view of such policy it is reasonable to suppose that the legislature of this State intended to pursue, as far as practicable, the same course with reference to refunding the overpaid taxes to New York companies as New York State had taken concerning the refunding to Connecticut companies of similar overpayments.

We are of opinion that the insurance commissioner properly construed the language of the resolution in respect to the character and extent of the duties imposed upon him. They were similar to those performed by an arbitrator. They called for the exercise of his judgment in the matter submitted to him. He was to decide what sums, under all the circumstances, ought to be refunded to the New York companies. In doing so it was proper for him to consider all the laws both of this State and New York which we have referred to.

It is said that the insurance commissioner wrongly regarded § 195 of the laws of New York as a restriction upon insurance companies and therefore improperly made it a condition precedent to the refunding of any taxes, that an application therefor should have been made within one year from the receipt of each annual tax bill.

The duty of considering the laws applicable to the question of what overpayments should be refunded having been imposed upon the insurance commissioner, neither the Superior Court nor this court has the power, especially by writ of mandamus, to review his conclusions, even upon questions of law. *American Casualty Ins. Co.* v. *Fyler*, 60 Conn. 448, 22 Atl. 494. As the resolution of 1905 did not impose upon the insurance commissioner the duty described in the application, and which in. the alternative writ he was commanded to perform, the motion to quash was properly granted.

There is no error.

In this opinion the other judges concurred.