WILLIAM E. TRAIKOFF et al., Appellants, *v.* JOHN R. HERREMA, Doing Business as I.G.A. FOODLINER, et al., Respondents.

Fourth Department, June 27, 1968.

*Robinson, Williams, Brown, Robinson & Angeloff* (*Mitchell T. Williams* and *Frank A. Aloi* of counsel), for appellants.

*Harold G. Ashworth* for respondents.

WITMER, J.   This is an appeal from a judgment insofar as it dismisses a cause of action of the amended complaint for an injunction restraining the defendants-respondents from exercising a zoning variance granted to them by the Zoning Board of Appeals of the Town of Irondequoit.   The record amply supports the findings and judgment of the trial court with respect to the merits of the issuance of the variance.   Appellants contend, however, that the variance expired for failure of respond-

ents to begin to exercise it within one year from its effective date, as required by the ordinance (§ 55–27, subd. C, par. [8]). The members of this court are in agreement that the effective date of the variance was not the date of the Zoning Board's decision, and we disagree only as to when it became effective. We hold such date to be the time of filing of the instrument signed by the respondents agreeing to the conditions imposed by the board in its decision granting the variance.

Following a hearing in which appellants participated, the Zoning Board of Appeals rendered its decision, filed January 5, 1966, granting a variance to respondents upon conditions to be set forth in an agreement to be prepared by the Town Attorney and accepted by the respondents. The decision further specified that appeal from it could be entertained within 30 days from the date of the filing of the agreement. The Town Attorney delayed preparing the agreement, and pending its submission, respondents did considerable work on the site, preparing it for construction of the new building and bringing in equipment and materials therefor. The conditions attached to the variance were later drafted by the Town Attorney and incorporated as part of a resolution by the Zoning Board of Appeals as of the date of the hearing, January 3, 1966, and at the foot thereof respondents signed agreement to such conditions. When the agreement was submitted by the Town Attorney to respondents for signature does not appear, nor does it appear when respondents in fact signed the agreement for the Town Attorney. Respondents' acceptance of the resolution-agreement bears date of July 21, 1966, and the instrument was filed in the Town Clerk's office on September 15, 1967.

The board imposed conditions upon issuance of the variance, and charged the Town Attorney with the responsibility for preparing the conditions and securing their acceptance, and presumably for filing the same, making the variance effective. This was a town function, not that of the applicant for the variance; and we find no basis for charging respondents with delay in filing the resolution-agreement.

By the terms of the variance it was not to become effective until the agreement was filed (see *Matter of Pansa v. Damiano,* 14 N Y 2d 356); and it seems clear that September 15, 1967 is the official effective date of the issuance of the variance. This practice by the Zoning Board of requiring filed consent to such conditions is not only reasonable, but completely fair to appellants, whose time in which to attack the variance, thus, did not begin to run until September 15, 1967 (*Matter of Pansa v. Damiano, supra*), at which time appellants were clearly aware

that the variance had been granted. For the same reason, the year within which respondents must exercise the variance granted to them began to run on that date; and there is, therefore, no question but that respondents began to exercise the variance within such year. Thus, there is no occasion for seizing upon the fact of late filing of the resolution-agreement as reason to reverse an otherwise proper judgment.

Appellants had two choices of action in 1967 — either to attack the variance in an article 78 proceeding or to proceed by action to have it declared a nullity, the latter of which they did (see *Lesron Junior* v. *Feinberg,* 13 A D 2d 90; *Namro Holding Corp.* v. *City of New York,* 17 A D 2d 431, 435; *Pansa* v. *Sitrin,* 27 A D 2d 636). They have had their full day in court, and we see no reason for granting another one to them.

The judgment should, therefore, be affirmed, without costs.

GOLDMAN, J. (dissenting). Appellants' property, which is located in a subdivision zoned residential, is adjacent to the respondent's property, which is zoned commercial and upon which he operates a retail establishment. On January 3, 1966 the Irondequoit Zoning Board of Appeals heard respondent's appeal from a denial of his application for a permit which sought to increase substantially the size of his store by the erection of an addition thereto which would be considerably closer to the side and rear lines of the lot than the required minimum setbacks. The application was granted the same day, subject to an agreement on details as to use and area. The notice of the board's decision was sent to the respondent but not to appellants.

After the board's decision, the Town Attorney prepared the resolution-agreement and it was executed by respondent on July 21, 1966. By the terms of the agreement the application for the variance was " granted subject to the following conditions, acceptance of which shall be made by execution and filing with the Board a written acceptance of the following: — ". Thus, it was respondent's obligation to execute the agreement and file it with the board. It was not filed, as evidenced by the Town Clerk's stamp, until September 15, 1967, a period of some 14 months after respondent signed it. Appellants contend on this appeal that they are entitled to injunctive relief on two theories: (1) the variance expired before it was exercised; and (2) the actual and planned construction did not comply with off-street parking and lot density requirements of the zoning ordinance. While the court's findings indicate that there were minor violations of the requirements set forth in the second objection, it concluded that the board impliedly authorized a

continuation of noncompliance with the off-street parking requirement in granting the setback variance. There is some indication in the record that respondent secured additional property to cure the parking violation and the violations are so minor that we do not consider the second point a sufficient ground for reversal.

The trial court and the respondent assert that the variance herein was granted under section 55–27-B of the Zoning Ordinance. It should be noted, however, that the court stated that " § 55–27-C(8) must be construed as having *special* application ". It is clear that the court meant subdivision B and not paragraph (8) of subdivision C. To reach this result the trial court relied on the " practical construction " canon and indicated that subdivision B relates to area variance and subdivision C to use variance. To apply such a construction to the ordinance would mean that area variance could only be granted upon appeal, while use variance could be granted by direct application to the board (cf. § 55–27, subds. B and C). Such a result would be patently illogical and would also ignore the clear language of section 55–27 (subd. C, par. [4]), which provides for the board granting variances for lot area, lot width, and rear or side setback requirements. To construe B as limited to area variances is clearly wrong, for that paragraph twice refers to "use ". Subdivision B contains both the "practical difficulties " and the " unnecessary hardships " standards which have been deemed to refer to the two different types of variance. (*Matter of Hoffman* v. *Harris,* 17 N Y 2d 138, 144; *Matter of Village of Bronxville* v. *Francis,* 1 A D 2d 236, affd. 1 N Y 2d 839; Anderson, Zoning Law and Practice in New York, § 18.30.)

Section 55–27 (subd. C, par. [8]) provides: " Any special permit and variance granted by the Board of Appeals shall become null and void unless exercised within one (1) calendar year from date so granted ". To assume that this one-year time limit does not also apply to subdivision B would make for absurd and unintended results. It cannot be seriously contended that an applicant who goes directly to the board under paragraph (4) of subdivision C has a year to "exercise " his variance, while one who goes through the purely formal but empty ceremony of first applying for a permit and then appealing from an inevitable and wholly justified denial has forever to act. Yet the respondent urges this construction.

Respondent further contends that certain work was done prior to the execution of the agreement on July 21, 1966 which should toll the running of the one-year statute. Such minimal work as removal of a tree stump, the bringing in of scaffolding

planks, the laying out of a building line and other similar activity could have been done without the granting of a variance and was in fact done before the variance became effective by the respondent's execution of the agreement. Futheremore, it is clear that mere activity of the sort allowed by a license or privilege is not the "exercise" of the prerogative. (See *People ex rel. Provident Sav. Life Assur. Soc.* v. *Miller,* 179 N. Y. 227, 230.) The acts committed by the respondent in connection with the proposed new store prior to August 8, 1967 required no building permit and therefore could not have been an exercise of the variance until that time. If a permit was unnecessary, a fortiori no variance was necessary and therefore it cannot be said that the variance was exercised by acts not dependent upon it for their legality.

Notwithstanding the court's indecision as to whether his determination was under subdivisions B or C, the rule of construction contained in the ordinance would seem to mandate the application of the one-year time limit in the case at bar even if it is concluded that the variance was granted under subdivision B of section 55–27. The interpretation and application of these provisions is contained in section 55–25 which sets forth the following rule: "Whenever the requirements of this local law or sections thereof are at variance with the requirements of any other lawfully adopted rules, regulations, ordinances or other sections of this local law, the most restrictive, or that imposing the higher standards shall govern." Since the variance here could have been granted under section 55–27 (subd. C, par. [4]), the quoted language mandates that either the one-year limit be read into B, or that the variance be deemed granted under the more restrictive provision of paragraph (4) of subdivision C. (Cf. *Matter of Case* v. *Knauf,* 32 Misc 2d 137, 140 [construing above subdivision].)

Any practical construction of the ordinance would dictate that the limitation should run from the date respondent was first authorized or enabled to "exercise" the variance. Since the grant was made subject to an agreement to be drawn by the Town Attorney, it would be unfair to start the running of the period from the date of the original decision. An applicant's rights should not be governed by the diligence *vel non* of the agent of another. But when the agreement was drawn and presented to respondent, he was then empowered to execute it, file it and obtain a permit. This date can be taken as no later than July 21, 1966, the date of signing by respondent. Once respondent became master of his own fate, the policy of the statute — to compel exercise of the right at the cost of losing

it—became of prime importance. (Cf. *Matter of Feinberg,* 18 N Y 2d 499, 507 ["The purpose of a Statute of Limitations is to penalize claimants for sleeping on their rights."].) There is neither statutory nor equitable ground for permitting respondent to exercise a pocket veto of the limitation by waiting 14 months after execution before filing the agreement. He should not be permitted to convert a limited variance into a perpetual right. *Matter of Pansa* v. *Damiano* (14 N Y 2d 356, 359–360) lends no support to the respondent's position. That decision, in stating that the variance became final and effective when the board's decision was filed, declared that in all fairness the objecting adjacent landowner should *not* be bound until he had notice of the filing. The majority, in attempting to use *Pansa,* is cutting against the rights of the objecting adjacent landowner and granting respondent a protection which the Court of Appeals gave to the objector aggrieved by the variance.

Because there was neither an "exercise" nor a valid extension of the variance, it became null and void before the building permit was issued in August, 1967. This renders the permit a nullity and mandates the granting of the injunction to prevent the violation of the zoning laws. A new application for all the needed variances, a hearing of the entire matter, the award or denial of the variance, and a full judicial review proceeding would not be an undue burden or delay on respondent whose inaction has caused his present predicament.

The judgment insofar as it dismissed the amended complaint should be reversed and the dismissal of appellants' first cause of action, which sought to enjoin respondent from constructing a building in violation of the Town of Irondequoit Zoning Ordinances, should not have been granted.

DEL VECCHIO and HENRY, JJ., concur with WITMER, J.; GOLDMAN, J., dissents and votes to reverse the judgment insofar as it dismissed the amended complaint and plaintiffs' first cause of action, in opinion, in which BASTOW, P. J., concurs.

Judgment insofar as appealed from affirmed, without costs.